UNITED STATES DISTRICT NEW YORK
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X          Index No: 2:22-cv-07736
JENNIFER GUERRERO,

                                        Plaintiff,

                                                                                     **COMPLAINT**

        -against-

CONSTELLATION HOME CARE, LLC (NY),
NATIONAL HEALTH CARE ASSOCIATES, INC,
CONSTELLATION HEALTH SERVICES, LLC,
CONSTELLATION HOME CARE, LLC (CT),
and, NICOLE STURTZ, individually.

                                        Defendants.
-------------------------------------------------------------------X

        Plaintiff, JENNIFER GUERRERO, previously known as JENNIFER PIEKARSKI, by her

attorneys, SLATER SLATER SCHULMAN LLP, hereby submits this Complaint and complains

of the Defendants, upon information and belief, as following:

                                    **NATURE OF THE ACTION**

1.    Plaintiff Jennifer Guerrero complains pursuant to pursuant to the Americans with

      Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights

      Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII"); the Pregnancy Discrimination Act of

      l978 ("PDA"), 42 U.S.C. § 2000 et seq.; and the New York State's Human Rights Law,

      NYS Exec. Law § 296, et seq. and seeks damages to redress the injuries Plaintiff suffered

      as a result of being exposed to disability discrimination, pregnancy/sex discrimination,

      retaliation, failure to accommodate, and wrongful termination.

2.    Jurisdiction of this action is conferred upon this Court as this action involves federal

      questions under the ADA and Title VII. The Court also has supplemental jurisdiction over

      the State causes of action.

3.   Venue is proper in this District based upon Defendants' place of business within Nassau County, State of New York, within the Eastern District of New York. 28 U.S.C. §1391(b).

4.   On or around August 27, 2021, Plaintiff filed a Complaint with the New York State Division of Human Rights ("DHR"), as set forth herein.

5.   Plaintiff's Complaint to DHR was dual-filed with the Equal Opportunity Employment Commission, being charge number 16GC10870.

6.   Plaintiff received her Right to Sue letter from the EEOC on September 21, 2022.

7.   Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue letter.

## PARTIES

8.   Plaintiff Jennifer Guerrero, who was known as Jennifer Piekarski while employed by Defendants, ("Plaintiff") is a Caucasian female who resided in Suffolk County, New York during all times relevant. She currently resides in Clark County, Nevada.

9.   Plaintiff worked as a Registered Nurse for Defendants at 6851 Jericho Tpke, Unit 150, Syosset, New York, located in Nassau County, from April 12, 2021, until August 26, 2021.

10.  Plaintiff is a covered employee within the meaning of the ADA, Title VII, and N.Y. Exec. Law.

11.  National Health Care Associates, Inc., is a Connecticut health services corporation. Upon information and belief, it is the umbrella corporation of the other defendant entities: Constellation Health Services, LLC of Connecticut, Constellation Home Care, LLC of New York, Constellation Home Care, LLC of Connecticut. For the sake of clarity, "Defendant Corps" refers to the above-mentioned entities and ultimately the employer of Plaintiff.

12.     Defendant Constellation Health Services, LLC is a Connecticut health services corporation with multiple locations in New York state, including the location at 6851 Jericho Tpke Ste. 150, Syosset, NY 11791-4462 in Nassau County at which Plaintiff was employed. This is the employer's name on the employee handbook given to Plaintiff.

13.     Defendant Constellation Home Care, LLC is a New York health services corporation.

14.     Defendant Constellation Home Care, LLC is a Connecticut health services corporation and the payor listed on Plaintiff's paystubs.

15.     Upon information and belief, Defendant Corps solicit business within the State of New York.

16.     Upon information and belief, Defendant Corps derive substantial revenues from goods used or consumed or services rendered in the State of New York.

17.     Defendant Corps are covered employers within the meaning of the New York State Human Rights Law, the ADA, and Title VII and at all relevant times, employed Plaintiff.

18.     Defendant Nicole Sturtz is employed by Defendant Corps as their Director of Human Resources and Total Rewards.

19.     Upon information and belief, Defendant Nicole Sturtz had hire and fire authority at all times.

### FACTS

20.     Plaintiff started working as a Registered Nurse for Defendants in Syosset, New York on April 12, 2021.

21.     Plaintiff received an excellent evaluation from Defendants in July of 2021, more than meeting the requirements of her job description. She received no official complaints during her tenure. Plaintiff also received many compliments from patients, one of which was

shared with the entire office shortly before her termination.

22.    Plaintiff learned she was pregnant while she was in training.

23.    Plaintiff first informed At that time she requested an accommodation for her pregnancy
from Supervisor Robin Salzman ("Salzman") so that she would not be required to enter the
house of a person suffering from shingles.

24.    On June 17, 2021, Plaintiff again informed Defendants of her pregnancy and disability
statuses when she sent an email to Director Tasha Williams ("Williams"). In that email,
Plaintiff requested an accommodation as she required an emergency ultrasound the next
day due to complications from her high-risk pregnancy and would not be able to see all of
her patients. Williams responded that they would talk soon and that she was required to
inform Defendant Nicole Sturtz of Plaintiff's disclosure.

25.    During the course of her pregnancy, Plaintiff suffered from multiple complications,
included gestational diabetes, pelvic pain, contractions, shortening of the cervix, and
hypertension. These conditions, among others, and the fact this pregnancy was consider a
geriatric pregnancy due to Plaintiff's age, constituted a disability and caused her pregnancy
to be labelled as "high-risk".

26.    On July 16, 2021, Plaintiff sent an email requesting the accommodation of having the day
off of work on Friday July 23, 2021, so that she could attend an appointment at her high-
risk obstetrician.

27.    Defendant Sturtz responded, refusing Plaintiff's request, writing erroneously that she was
ineligible for time-off and asking her if she would be willing to instead work the following
day, Saturday July 24, 2021. As the procedure Plaintiff and her baby required could take
overnight, she could not agree to this suggestion.

28.     When Plaintiff questioned why she was ineligible for time-off, Defendant Sturtz replied by asking if Plaintiff had received her 90-day sign off. When Plaintiff answered that she had, Defendant Sturtz wrote that, regardless of Plaintiff's eligibility for time-off, Defendants "cannot accommodate this day," as they "already have too many Suffolk RN's off".

29.     When Plaintiff suggested the accommodation that she instead work until 12:00pm that Friday, then attended her appointment, Defendant Sturtz again refused, writing that she had spoken with Williams, and she would need Plaintiff to work the Saturday shift if she wanted to attend her emergency medical appointment on Friday.

30.     Plaintiff wrote back that she had no choice but to accept this arrangement and warned Defendant Sturtz and Williams that "if they perform an amniocentesis that day … I might not be able to work [Saturday]." Williams then suggested Plaintiff instead work a Sunday shift, but Plaintiff could not accept as she lacked the specialized childcare her older child required, as he is on the autism spectrum and non-verbal. Only then did Defendant Sturtz give permission for Plaintiff to work from 8am-12pm on that Friday, allowing her the afternoon for her emergency appointment.

31.     Plaintiff saw her patients according to a schedule of her own creation and therefore did not understand why Defendant Sturtz would not allow her the time-off to see her doctor. She would be able to arrange her week so that all of her patients could be seen prior to the Friday shift, however Defendant Sturtz was insistent she be available that day.

32.     Plaintiff believed that Defendants' refusal to make accommodations was discriminatory in that Defendant was retaliating against Plaintiff not disclosing she was pregnant at hiring or for requesting accommodations related to her disability and pregnancy status. While Plaintiff had no obligation to disclose her pregnancy status at hiring, however as written

5

above, Plaintiff was unaware that she was pregnant until she began training.

33.     On August 17, 2021, Plaintiff received a company-wide email promulgating a policy that required all employees to either obtain a Covid vaccine or seek a religious or medical exemption. Plaintiff responded to the email, requesting a medical exemption due to her high-risk pregnancy. Plaintiff had discussed the vaccine with her doctor and felt the risk to her child was too high.

34.     Defendant Sturtz responded to Plaintiff's email and provided the requested form. In the same email, Sturtz also "strongly encouraged" Plaintiff to obtain the vaccine, arguing against the decision of Plaintiff and her doctor.

35.     On August 19, 2021, Plaintiff submitted her medical exemption form, as completed by her physician, to Defendants. Roughly 30 minutes later, Defendant Sturtz wrote back that Plaintiff's form was deficient. She wrote that the physician needed to: state the specific job restrictions of Plaintiff, explain how the vaccine was detrimental to Plaintiff's health, and provide a "legal allowable electronic signature or written signature" on the form.

36.     On August 24, 2021, Defendant Sturtz emailed Plaintiff again about her exemption request as she wanted to "ensure [Plaintiff's] exemption is fully vetted by [Defendants'] legal team," presumably due to the minor defects listed above. Plaintiff responded shortly thereafter to write that she had asked the doctor to cure the defects but had not yet heard back.

37.     That same day, Plaintiff began experiencing sharp pelvic pain, comparable to a contraction. She went to see her doctor, Doctor Craig Linder, who advised her to remain out of work for six days, until August 30, 2021. He also instructed her to speak to her high-risk pregnancy doctor. Dr. Linder provided a note reading: "[Plaintiff] is advised to stop

working **out** until Monday…" (emphasis added). The inclusion of "out" is no doubt an error as no one would require a note to stop working out or to approve such stopping.

38.     That same day, Plaintiff called in to Defendants and spoke with Salzman. Plaintiff told Salzman that she would not be able to work until August 30, 2021, due to complications with her high-risk pregnancy.

39.     Roughly thirty-minutes later, Salzman emailed Plaintiff at the direction of Defendant Sturtz and requested a doctor's note to substantiate the time off Plaintiff would need.

40.     Plaintiff responded almost immediately and submitted a doctor's note via email to Defendant Sturtz, Salzman, and Williams.

41.     On August 25, 2021, Plaintiff spoke with her high-risk pregnancy doctor regarding the pains she was experiencing. She was advised she should stop working in her current role due to her high-risk pregnancy. She was provided a note that indicated the same.

42.     On August 26, 2021, at 12:26pm, Plaintiff sent an email to Defendant Sturtz and Williams, explaining that her doctor recommended she stop working until she gave birth and attaching the letter from her high-risk doctor explaining the same. In the email, she requested help and guidance from Defendants for her situation, specifically asking for assistance filing for short-term disability and FMLA. She also requested the paperwork she needed to file for both.

43.     Defendant Sturtz called Plaintiff approximately 8 minutes after the email was sent. On the call, Defendant Sturtz stated that Plaintiff was not eligible for FMLA leave and lacked any legal protection for her position as she had not worked for the company for a long enough period.

44.     On the same call, Defendant Sturtz stated that, as Defendants were not required to retain

Plaintiff due to her lack of job protection, Defendants would accept her request for help, guidance, and accommodation as a letter of resignation. Defendant Sturtz told Plaintiff that Defendants would not be willing to hold her position for her.

45.     Plaintiff responded, telling Defendant Sturtz that she was not resigning and asking if she was being terminated. Defendant Sturtz again told her that Defendants "cannot and will not save her position" as to do so would violate company policy and reiterated that Defendants had no obligation to provide Plaintiff with job protection. Defendant Sturtz then told Plaintiff to drop off her employee badge and supplies the next week and that she would be given her requested paperwork at that time.

46.     Defendant Sturtz never suggested any accommodations that could be made so that Plaintiff could continue working. Had Plaintiff known she was ineligible for FMLA leave and job protection, she would have sought to find a reasonable accommodation so that she could remain employed with Defendants, such as a remote position.

47.     At the end of the August 26 phone call, Defendant Sturtz stated that "we are parting on good terms" and that Plaintiff should "feel free to reapply for a position with the company after you've had your child," leaving no doubt the pregnancy and related disability was the motivation for Plaintiff's termination.

48.     Plaintiff immediately became concerned about the situation as she needed the health insurance provided by her job, specifically due to her high-risk pregnancy.

49.     Plaintiff was also concerned about her accrued paid time off.

50.     Plaintiff filed a charge with the New York Department of Human Rights on that same day, August 26, 2021, alleging discrimination on account of her high-risk pregnancy, and sex/gender discrimination on account of her pregnancy.

51.    On August 28, 2021, Plaintiff received a letter from Defendants, signed by Defendant Sturtz, stating that she was "not eligible for Family Medical Leave because you did not meet the minimum requirement to take a family medical leave of absence." Enclosed with the letter was the FMLA paperwork Plaintiff had requested. However, the short-term disability paperwork that she requested was not included.

52.    Shortly after Plaintiff's termination, she saw a job listing from Defendants advertising a role for a registered nurse that was completely remote. This is precisely the sort of accommodation that she would have requested had Defendants been willing to enter into the interactive process of accommodation with her.

53.    Plaintiff began looking for remote roles after her termination, hoping to find employment, as she was forced to empty her 401k retirement account due to the high cost of her COBRA insurance.

54.    Due to Defendants withholding her short term-disability paperwork, Plaintiff was required to administer her claim for short-term disability herself by calling worker's compensation and finding out her employer's insurance information.

55.    During the course of her pregnancy, Plaintiff suffered from: gestational diabetes, pelvic pain, contractions, shortened cervix, and stress. Plaintiff feels these conditions were exacerbated by the behavior of Defendants.

56.    Plaintiff gave birth to her son on December 6, 2021. Her son has the condition of Down's Syndrome, which was undiagnosed in utero. He was induced early at thirty-seven (37) weeks as Plaintiff was suffering from hypertension and her medical team was concerned the stress-caused condition was affecting the baby's health.

57.    After the delivery of her son, Plaintiff suffered from a post-op abdominal hematoma, which

drained through her wound from the delivery, requiring her to be rushed to the hospital. Plaintiff feels that stress from her lack of money and her termination and inequitable treatment by Defendants were responsible for the condition.

58.     Six weeks after the birth of her son, Plaintiff filed for unemployment. This filing was contested by Defendants, despite Plaintiff being told that they "parted on good terms." Defendants variously claimed that Plaintiff resigned and was not fired, Plaintiff is ineligible as she wasn't back to work, and that Plaintiff had her own business and was therefore ineligible.

59.     Plaintiff was ultimately granted unemployment benefits, which benefits Defendants again sought to contest by appealling, but later relented.

60.     Defendants refused to engage in an interactive process regarding Plaintiff's request for accommodations due to her disability.

61.     Defendants refused to make reasonable accommodations on account of Plaintiff's pregnancy and disability.

62.     Defendants wrongfully terminated Plaintiff, the motivating factors for the termination were Plaintiff's disability, pregnancy, retaliation for Plaintiff's non-disclosure of her pregnancy status upon hiring, and retaliation for requesting accommodations for her disability.

63.     But for Plaintiff's disability and pregnancy, Plaintiff would not have been terminated.

64.     Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

65.     As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer pecuniary damages, in forms including, but not limited to, lost income, and lost future earnings.

66.     As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer from severe emotional distress, mental anguish, and pain and suffering. The health complications from Plaintiff's already high-risk pregnancy were exacerbated by her poor treatment by Defendants and the stress that treatment caused. While Plaintiff understands that these factors did not cause her child to be born with Down's Syndrome, she feels that her pregnancy, his birth, and on-going lifelong health and functioning were negatively affected by the actions of Defendants.

67.     Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

68.     Defendants exhibited a pattern and practice of discrimination.

**AS A FIRST CAUSE OF ACTION**
**Disability Discrimination Under the ADA**
**(Not Against Any Individual Defendant)**

69.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

70.     The Americans with Disabilities Act ("ADA") prohibits discrimination against a qualified individual on the basis of disability. 42 U.S.C. §§ 12112.

71.     At all relevant times, Plaintiff suffered from complications related to her high-risk pregnancy including gestational diabetes, pelvic pain, contractions, and shortening of the cervix (collectively "complications from high-risk pregnancy"), all of which are a disabilities related to pregnancy and protected by the ADA.

72.     The Plaintiff's complications from her high-risk pregnancy substantially limited certain of her major life activities.

11

73.     Plaintiff was a qualified individual, possessing the requisite skills needed for performing her duties at the time of Defendants' adverse decision.

74.     Defendants were on notice that Plaintiff suffered from a qualified disability during the relevant period.

75.     Plaintiff requested multiple accommodations for her disability.

76.     Defendants discriminated against Plaintiff by refusing to engage in an interactive process with her and by refusing to accommodate her disability.

77.     Defendants' refusal to provide a reasonable accommodation for Plaintiff's high-risk pregnancy constituted unlawful intentional discrimination in violation of 42 U.S.C. §12112(b)(5)(A).

78.     On August 26, 2021, Defendants terminated Plaintiff's employment based on her disability.

79.     Defendants' termination of Plaintiff constituted unlawful intentional discrimination in violation of 42 U.S.C. § 12112(a).

80.     As a result of Defendants' intentional and willful discrimination, Plaintiff has suffered substantial emotional and financial harm.

81.     Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### Sex Discrimination Under Title VII, The PDA
### (Not Against Any Individual Plaintiff)

82.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

83.    Title VII as codified within 42 U.S.C. § 2000e-2 prohibits discrimination based upon sex
       and 42 U.S.C. §2000e(k), the Pregnancy Discrimination Act ("PDA") explicitly prohibits
       discrimination based on pregnancy and related medical conditions.

84.    Defendants discriminated against the Plaintiff by terminating her employment based on
       complications from her high-risk pregnancy, medical conditions related to pregnancy.

85.    As a result of Defendants' intentional and willful sex discrimination, Plaintiff has suffered
       substantial emotional and financial harm.

86.    Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an
       amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### Disability Discrimination Under the NYSHRL

87.    Plaintiff repeats and realleges each and every allegation above with the same force and
       effect as if fully set forth herein.

88.    The New York State Human Rights Law ("NYSHRL"), Section § 296, prohibits unlawful
       discriminatory employment practices on the basis of disability.

89.    Plaintiff suffered from a disability as defined by the NYSHRL.

90.    Defendants violated the NYSHRL by discriminating against the Plaintiff by not initiating
       an interactive process with the Plaintiff following her request for an accommodation, by
       not accommodating her disability, and by terminating her employment based on her
       disability.

91.    As a result of Defendants' intentional and willful disability discrimination, Plaintiff has
       suffered substantial emotional and financial harm.

92. Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### Sex Discrimination Under the NYSHRL

93. Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

94. The New York State Human Rights Law ("NYSHRL"), Section § 296, prohibits unlawful discriminatory employment practices based on sex which includes pregnancy and medical conditions relating to pregnancy.

95. Defendants terminated Plaintiff's employment because of her complications from her high-risk pregnancy, a medical condition related to pregnancy.

96. Defendants have unlawfully discriminated against the Plaintiff on the basis of her sex in violation of NYSHRL §296.

97. As a result of Defendants' intentional and willful sex discrimination, Plaintiff has suffered substantial emotional and financial harm.

98. Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### Retaliation Under the ADA

99. Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

100. 42 U.S.C.S. § 12203, which appears in Title V of the ADA, prohibits retaliatory discrimination against an individual who has opposed any act or practice which the ADA makes unlawful.

101.    Plaintiff engaged in protected activities under the ADA, by requesting accommodations for her complications from her high-risk pregnancy.

102.    Defendants took adverse actions against Plaintiff with the purpose of retaliating against her because of her participation in the protected activities of requesting accommodations. This is a violation of the ADA which makes it unlawful for an employer to retaliate against its employees for engaging in protected activities.

103.    As a result of Defendants' retaliation, Plaintiff has suffered substantial emotional and financial harm.

104.    Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**Retaliation Under Title VII**

105.    Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

106.    Plaintiff engaged in protected activities, including requesting accommodations under the Pregnancy Discrimination Act under Title VII.

107.    Defendant took adverse actions against Plaintiff with the purpose of retaliating against her because of her participation in the protected activities which is a violation of Title VII which makes it unlawful for an employer to retaliate against its employees for opposing unlawful employment practices.

108.    As a result of Defendants' retaliation, Plaintiff has suffered substantial emotional and financial harm.

109.   Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
### Disability Discrimination Under the NYSHRL
### (Aiding and Abetting)

110.   Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

111.   New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

112.   Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding and abetting, inciting, compelling and coercing the discriminatory conduct.

113.   As a result of Defendants' retaliation, Plaintiff has suffered substantial emotional and financial harm.

114.   Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
### Disability Discrimination Under the NYSHRL
### (Retaliation)

115.   Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

116.   New York State Executive Law §296(7) provides that it shall be an unlawful and discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any

practices forbidden under this article."

117.   Defendant engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

118.   As a result of Defendants' retaliation, Plaintiff has suffered substantial emotional and financial harm.

119.   Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff seeks a judgment against Defendants:

    A.   Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA, Title VII of the Civil Rights Act of 1964, and New York State Executive Law §296, et seq. by discriminating against Plaintiff based on her disability, gender/sex, and retaliating against Plaintiff in response to her protected complaints of such discrimination;

    B.   Making Plaintiff "whole" for the losses suffered as a result of such unlawful employment practices;

    C.   Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, and pain and suffering;

    D.   Awarding Plaintiff attorney's fees, costs and expenses incurred in the prosecution of the action;

    E.   Awarding Plaintiff lost wages, back wages, lost future earnings, compensatory damages, and punitive damages;

    F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.


Dated: Melville, New York
       December 19, 2022

                                            Respectfully submitted,

                                            *Geoffrey Kalender*

                                            Geoffrey A. Kalender, Esq.
                                            John C. Luke, Jr., Esq.
                                            445 Broad Hollow Road, Suite 419
                                            Melville, New York 11747
                                            (631) 420-9300
                                            *Attorneys for Plaintiff*