UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JENNIFER GUERRERO,

                Plaintiff,

        -against-

CONSTELLATION HEALTH SERVICES, LLC,
CONSTELLATION HOME CARE, LLC (CT),
CONSTELLATION HOME CARE, LLC (NY), and
NICOLE STURTZ,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-07736 (OEM)(LGD)

ORELIA E. MERCHANT, United States District Judge:

On December 19, 2022, plaintiff Jennifer Guerrero ("Plaintiff") commenced this employment discrimination action against defendants Constellation Health Services, LLC, Constellation Home Care, LLC (CT), Constellation Home Care, LLC (NY), and Nicole Sturtz, Constellation Home Care (NY) Director of Human Resources ("Sturtz") ("Defendants"), alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq*.; the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000(e), *et seq*.; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. 290, *et seq*. *See generally* Complaint ("Compl.") ¶ 1, ECF 1.

Before the Court is Defendants' fully-briefed motion for summary judgment seeking dismissal of all claims asserted against them.[1] For the following reasons, Defendants' motion is granted in part and denied in part.

---

[1] Defendants' Motion for Summary Judgment, ECF 68; Defendants' Memorandum of Law in Support ("Defs.' Mem."), ECF 68-1; Defendants' Local Civil Rule 56.1 Statement ("Defs.' 56.1"), ECF 56-1; Declaration of attorney Ruth Bogatyrow Kraft ("Kraft Decl."), ECF 56-2; Exhibits A through Z, ECF 56-3-56-28; Plaintiff's Response in

# BACKGROUND[2]

## A.    Factual Background

Plaintiff is a nurse licensed in New York, Nevada, Wisconsin, and New Hampshire.  Defs.'
56.1 Reply ¶¶ 1, 3.  On April 12, 2021, Plaintiff began her employment with Constellation Home
Care, LLC (NY) ("Constellation") as a Registered Field Nurse Case Manager.  *Id.* ¶¶ 4, 5.
Plaintiff's job required her to make and document care visits in client's homes and at health
facilities and to regularly see clients in person.  *Id.* ¶¶ 10, 11.  Plaintiff was qualified for her role.
*Id.* ¶¶ 11, 96.

### 1.    Plaintiff's Pregnancy and Accommodation Requests

On June 17, 2021, Plaintiff told Tasha Williams, her clinical supervisor at Constellation,
that she was pregnant and requested time off from work to have an emergency ultrasound.  *Id.*
¶ 15.  That request was granted, and Plaintiff attended her appointment.  *Id.* ¶ 17.  On July 16,
2021, Plaintiff requested and was granted time off from work to attend a doctor's appointment on
July 23, 2021.[3]  *Id.* ¶¶ 17-19.  The parties dispute whether granting these requests constituted
accommodations.  *Id.* ¶ 18.

On August 17, 2021, Plaintiff requested a medical exemption from Constellation's
COVID-19 vaccination policy, and she submitted the medical exemption form on August 19, 2021.
*Id.* ¶ 26.  On that form, Plaintiff answered "no" in response to whether she required a reasonable

---

Opposition ("Pl.'s Opp."), ECF 69; Plaintiff's Local Civil Rule 56.1 Counterstatement ("Pl.'s 56.1"), ECF 69-1;
Declaration of Geoffrey Kalender ("Kalender Decl."), ECF 70; Exhibits 1 through 16, ECF 70-1-70-16; Exhibits A
through Z, ECF 70-17-70-31; Defendants' Reply ("Defs.' Reply"), ECF 71; Defendants' Local Civil Rule 56.1 Reply
Statement ("Defs.' Reply 56.1"), ECF 71-1.

[2] The facts in this section are undisputed unless otherwise stated. Where facts stated in a party's Rule 56.1 Statement
are supported by testimonial or documentary evidence, and are denied with only a conclusory statement by the other
party or without citation to evidence, the Court finds such facts to be true.  E.D.N.Y. Local Rule 56.1 (c)-(d).

[3] Plaintiff disputes that her request was granted, asserting rather that Sturtz granted Plaintiff permission to attend her
doctor's appointment on July 23, 2021, but required Plaintiff to make up for the hours missed by working the next day
because too many other nurses would be off that day.  The Court finds that Plaintiff has not properly disputed
Defendants' assertion that her request to attend her doctor's appointment on July 23, 2021, was in fact granted.

accommodation to perform essential job functions. *Id*. ¶ 28. This request was initially denied because it did not state specific restrictions, it did not explain how the vaccine caused risk to Plaintiff's pregnancy, and it was not signed by Plaintiff's medical provider. *Id*. ¶ 30.

On August 24, 2021, after Plaintiff experienced sharp pelvic pain, Plaintiff obtained a letter on the letterhead of her obstetrician's practice, advising that she should "stop working out" until Monday, August 30, 2021, due to complications with her pregnancy. *Id*. ¶ 32, *see* ¶¶ 21, 62.

### 2. Events on August 26, 2021

By August 2021, Plaintiff was five months pregnant, Defs.' 56.1 Reply ¶ 41, and on August 26, 2021, at 12:26 p.m., she emailed Sturtz and Williams about short-term disability due to complications from her high-risk pregnancy and guidance on her eligibility for leave pursuant to the Family Medical Leave Act ("FMLA"), *id*. ¶ 34 (citing Exhibit L, ECF 56-14). Plaintiff's email reads as follows:

> Good afternoon,
> Unfortunately, my doctor feels I need to stop working at this time due to the risk to my pregnancy secondary to new complications. Attached you will find the letter from my high-risk doctor. If you could please help and guide me as to what I do next, I would appreciate it, as I have never had to do this before. I'm assuming I need to go on short term disability now instead of when the baby comes, if there is additional paperwork needed, please send it to me.
> Also, do I file for [Family Medical Leave Act] as well? Or is that the same thing?
> Thank you in advance, and sorry again . . . it was not my desire to stop working as I really do enjoy it, but I have to put my child first.

Exhibit L, ECF 56-14. Plaintiff attached to the email a note from Dr. El Kady dated August 25, 2021, which reads as follows:

> To whom it may concern:
> This letter is to inform you that [Plaintiff] is presently under the care of Maternal Fetal Medicine. As per physician's instructions, due to [Plaintiff's] high-risk

pregnancy, she should be out of work indefinitely.  Should you have any further [questions], please feel free to contact us.
Thank you.

Defs.' 56.1 Reply ¶ 35.

Approximately eight minutes after Plaintiff emailed Sturtz and Williams, Sturtz called Plaintiff.  Defs.' 56.1 Reply ¶ 37.  The parties dispute what occurred during that call and how it ended.  *Id*. ¶¶ 38-3, 43-46, 57-58.  Defendants state that Plaintiff requested "indefinite" leave and was frustrated when she learned that she was ineligible for FMLA.  *Id*. ¶ 38-43.  Defendants state that Sturtz sought to engage Plaintiff in an interactive process to keep Plaintiff employed, but that Plaintiff became angry and hung up on Sturtz.  *Id*.  Plaintiff disputes these asserted facts.  *Id*. ¶ 38.

Sturtz took contemporaneous notes of this conversation, two versions of which were produced in discovery.  Exhibit 6 ("Termination Notes #1"), ECF 70-6; Exhibit 7 ("Termination Notes #2"), ECF 70-7.  Termination Note #1 reads, in relevant part,

> [Plaintiff] stated so you are firing me?  HR advised that we have a position available, but she is medically unable to work.  Therefore, we view this as a resignation.  That she is leaving in good standing and is eligible for rehire should she wish to return . . . .  HR advised that she could enroll in COBRA benefits and that again she can reapply should she be released back to work before the baby comes or after.

Termination Note #1, ECF 70-6.  Termination Note #2 reads, in relevant part,

> [Plaintiff] is not eligible for Family Medical Leave as she has not been employed for a full calendar year.
> She stated so you are firing me? HR advised that we have a position available, but she is medically unable to work. Therefore, we view this as a resignation. That she is leaving in good standing and is eligible for rehire should she wish to return.
> That since her doctor has placed her out indefinitely we cannot hold her role as there is no end date.
> Individual stated, "that you are screwing her" and that she is 5 months pregnant an losing her benefits.
> HR advised that she can enroll in COBRA benefits and that again she can reapply should she be released back to work before the baby comes or after….

4

> HR then stated we will need to coordinate the return of your equipment as we know you are placed out medically but there is someone available Friday, and all of next week. Is there a day that works best?
> Jennifer responded yea whatever and hung up[.]

Termination Note #2, ECF 70-7.

Defendants assert that after this call, Plaintiff was placed on "an inactive status," not fired. Sturtz Dep. Tr. 38: 4-8. However, on September 2, 2021, Sturtz authored a letter addressed to Plaintiff, stating that the company was "sorry to hear of [Plaintiff's] resignation of employment" and her "last day employed with Constellation Home Care [was] August 26, 2021." Defs.' 56.1 Reply ¶ 97; *see also* ECF 70-11. Plaintiff also received a letter from a third-party benefits administrator regarding her experiencing "an event of a/an termination." Defs.' 56.1 Reply ¶ 60.

Plaintiff gave birth on December 6, 2021. *Id*. ¶ 71. On February 2, 2022, Plaintiff received "a notice [from Constellation] offering her . . . employment as a case manager field nurse at the same rate of pay, to which Plaintiff did not respond." *Id.* ¶ 72.

## B.    Administrative History

On August 26, 2021, Plaintiff filed a charge with the New York State Division of Human Rights alleging pregnancy discrimination against Constellation. *Id*. ¶ 54-55. This charge was co-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 5. Plaintiff received a right to sue letter from the EEOC on September 21, 2022. *Id.* ¶ 6.

## PROCEDURAL HISTORY

Plaintiff filed this action on December 19, 2022, and on January 24, 2023, the Court granted Plaintiff's voluntarily dismissal of defendant National Health Care Associates, Inc. ECF 1, 13, and Docket Order dated 1/24/2023. The remaining defendants filed an answer to Plaintiff's complaint on January 20, 2023. Answer, ECF 14.

On July 6, 2023, this case was reassigned to the undersigned.

Plaintiff filed three motions to amend the complaint to add a retaliation claim under the FMLA, which the Court denied. *See* ECF 19, 33, 39, Docket Order dated 12/18/2023.

On July 1, 2024, Defendants filed a pre-motion conference request on their anticipated motion for summary judgment. ECF 56. The Court denied the request and instead set a briefing schedule on Defendants' motion. Defendants' fully-briefed motion for summary judgment was filed on October 8, 2024.

## LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 56 Standard

In resolving a motion for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56"), the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp.,* 477 U.S. at 322-23. The non-moving party

must show more than "[t]he mere existence of a scintilla of evidence" in support of his or her position; "there must be evidence on which the jury could reasonably find for the" non-movant. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted). In other words, to defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

**B.    The *McDonnell Douglas* Burden Shifting Framework**

Plaintiff's claims are analyzed under the three-step burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), clarified in *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). *See McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (ADA disability discrimination claim); *Willford v. United Airlines, Inc.*, 2021 WL 4066502 (S.D.N.Y. Sept. 7, 2021) (NYSHRL disability discrimination claim); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016) (Title VII/PDA and NYSH sex discrimination claims); *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (Title VII retaliation claim). Although the *McDonnell Douglas* framework shifts the "intermediate evidentiary burdens" between the plaintiff and defendants, "the ultimate burden of persuading the trier of fact that the defendant[s] intentionally discriminated" or retaliated against the plaintiff, "remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (cleaned up) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. *Burdine*, 450 U.S. at 252-53. The elements with respect to a plaintiff's prima facie case vary depending on the substantive claim, but courts have nonetheless held that plaintiff's burden at this step is de minimis – that is, not onerous. *Id.* at 253. If the plaintiff satisfies her prima facie case, the burden then shifts to the defendants to articulate a legitimate, non-discriminatory or non-retaliatory reason for the challenged employment action. *Id.* at 254.

If defendants articulate a legitimate, non-discriminatory or non-retaliatory reason for their action, the burden shifts back to plaintiff to show that reasonable jury could find that the proffered reason is "not the true reason" or is otherwise a pretext for discrimination or retaliation. *Id.* at 256. At the final step of the *McDonnell Douglas* framework, the Court must "examine the entire record

– including evidence from the plaintiff's prima facie case, additional evidence suggesting pretext, and other evidence of the defendant's discriminatory or retaliatory intent – and to 'determine whether the plaintiff could satisfy [her] ultimate burden of persuading the trier of fact that the defendant[s] intentionally discriminated' or retaliated against [her]." *Wynn v. New Haven Bd. of Educ.*, 21-CV-00925 (SVN), 2024 WL 1157148, at *5 (D. Conn. Mar. 18, 2024) (quoting *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000)).

## DISCUSSION

Plaintiff's claims are categorized as follows: (1) disability discrimination under the ADA and the NYSHRL, including a claim of aiding and abetting under the NYSHRL against Sturtz individually (first and third causes of action); (2) sex discrimination under Title VII/PDA and NYSHRL (second and fourth causes of action); and (3) retaliation claims under Title VII, the ADA, NYSHRL (fifth, sixth, and eight causes of action). Defendants argue that they are entitled to summary judgment on Plaintiff's claims because: Plaintiff's request for "indefinite" leave is unreasonable as a matter of law; Plaintiff was responsible for the breakdown in the statutes' contemplated interactive process; and Plaintiff has otherwise failed to make out a prima facie case on each claim. *See generally* Defs.' Mem.

**A.    Plaintiff's Disability Discrimination Claims under the ADA and NYSHRL**

The ADA prohibits discrimination against a qualified individual on the basis of disability regarding the terms, conditions, and privileges of employment. *McBride*, 583 F.3d at 96 (quoting 42 U.S.C. § 12112(b)(5)(A)); *accord* 42 U.S.C. § 12112(a). The ADA also "requires employers to take certain affirmative steps to assist employees with disabilities," which include reasonably accommodating "the known physical or mental limitations of an otherwise qualified individual unless the employer can demonstrate that the accommodation would impose an undue hardship on

the operation of its business." *Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) (quoting

42 U.S.C. § 12112(b)(5)(A)).  Claims under the ADA and the NYSHRL are analyzed under the

same legal framework, as "New York State disability discrimination claims are governed by the

same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. Of Onondaga, P.C.*, 369

F.3d 113, 117 n.1 (2d Cir. 2004).

Disability discrimination claims under the ADA and NYSHRL may be brought under a

theory of adverse employment action (*i.e.,* wrongful termination) or failure to provide reasonable

accommodation (*i.e,* failure-to-accommodate).  *Burgess v. New Sch. Univ.*, 23-CV-4944 (JGK),

2024 WL 4149240, at *11 (S.D.N.Y. Sept. 11, 2024).  Plaintiff brings claims under both theories,

alleging that (1) Defendants failed to accommodate various "complications related to her high-risk

pregnancy including gestational diabetes, pelvic pain, contractions, and shortening of the cervix"

and (2) Defendants terminated her employment based on her disability, (3) did not initiate or

engage in an interactive process to determine a reasonable accommodation.  Compl. ¶¶ 71, 77-78,

90.  For claims based both on adverse employment actions and on failures to accommodate, "the

plaintiff 'bears the burdens of both production and persuasion as to the existence of some

accommodation that would allow [her] to perform the essential functions of [her] employment.'"

*McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (quoting *McBride*, 583 F.3d at

97).

### 1.    Failure to Accommodate Claim

The ADA requires employers to "mak[e] reasonable accommodations to the known

physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C.

§ 12112(b)(5)(A).  To make out a *prima facie* failure to accommodate discrimination claim under

the ADA or NYSHRL, a plaintiff must establish that: (1) she is a person with a disability under

10

the meaning of the ADA or the NYSHRL; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *Tafolla v. Heilig*, 80 F.4th 111, 118-19 (2d Cir. 2023) (citing *McBride*, 583 F.3d at 97); *see Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYSHRL] . . . is governed by the same legal standards as govern federal ADA claims.").

As an initial matter, to maintain a claim premised on a failure to accommodate, a plaintiff must show that she requested an accommodation. *Turner v. Delta Airlines*, 658 F. Supp. 3d 123, 137 (E.D.N.Y. 2023). "An employee does not have to use any particular words in order to request an accommodation; it is enough, under both the ADA and the NYSHRL, for the employee to make the employer aware of his or her disability and to ask whether an accommodation can be made." *Hampson v. State Farm Mut. Auto Ins. Co.*, 12-CV-00258 (BKS) (CFH), 2015 WL 12733387, at *12 (N.D.N.Y. Mar. 26, 2015) (collecting cases). Thus, the employee's request does not need to be "in writing or follow any specific format to constitute a request for a reasonable accommodation." *Saborit v. Harlem Hosptial Ctr. Auxiliary, Inc.*, 19-CV-4686 (LJL), 2021 WL 2709411, at *20 (S.D.N.Y. July 1, 2021). The request itself need not be formal, but it must be sufficiently direct and specific to give the employer notice of the needed accommodation and of the disability. *Id.* Here, on August 26, 2021, Plaintiff emailed Sturtz and Williams, stating that she needed to stop working because of her high-risk pregnancy and that she "assum[ed] [she would] need to go on short term disability [soon] instead of when the baby comes." Plaintiff's Email, ECF 56-14. She also wrote that she would appreciate Sturtz's "help and guid[ance]" on what she needed to do next in terms of filing paperwork and inquired as to whether FMLA leave was a possibility. *Id.* While Plaintiff did not use the specific words that she is requesting an

11

accommodation, Plaintiff's August 26, 2021 email put Defendants on notice of her needed accommodation, and Defendants do not dispute that the email constitutes a request for accommodation.

### a)   Prima Facie Case

Defendants argue that Plaintiff cannot make a prima facie case because Plaintiff cannot adduce facts establishing that she is disabled within the meaning of the ADA or the NYSHRL (element one), that Plaintiff, with reasonable accommodation, could perform the essential functions of a nurse (element three), and that Defendants refused to make accommodations (element four).  Defs.' Mem. at 15-16.  Defendants do not contest that they had notice of Plaintiff's pregnancy as of June 17, 2021, but rather dispute that her pregnancy constituted a disability.  Defs. 56.1 Reply ¶ 15.

### 1)   Disability

Defendants assert that Plaintiff is not disabled under the meaning of the ADA or NYSHRL because "at the time that Plaintiff made her request for 'indefinite' leave, her only symptoms were "pain and contractions related to her cervix."  Defs.' Mem. at 17.  In support, Defendants rely on the expert opinion of Dr. Klein to reach the conclusion that Plaintiff merely experienced "the standard aches and pains of pregnancy[,]" and therefore was not disabled.  *Id.*

Under the ADA, a person is disabled if she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [she is] regarded as having such an impairment." 42 U.S.C. § 12102(1).  The ADA specifies that "major life activities include, but are not limited to . . . walking, standing, lifting, bending . . . and working."  *Id.* § 12102(2)(A).  Congress amended the ADA in 2008 to lower the burden for a plaintiff to prove that she meets the ADA's definition of disability, *Price v.*

*City of New York*, 558 F. App'x 119, 120 (2d Cir. 2014), and the Act specifies that its definition "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The "principal purpose" of the 2008 amendment was to "make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020). NYSHRL has more relaxed standards for what constitutes a disability than the ADA, providing that "an individual can be disabled under the [NYSHRL] if his or her impairment is demonstrable by medically accepted techniques; it is not required[, as with the ADA,] that the impairment substantially limit that individual's normal activities." *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc*., 15-CV-7710 (ER), 2017 WL 1194686, at *13 (S.D.N.Y. Mar. 30, 2017) (quoting *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 155 (2d Cir. 1998).

Pregnancy itself is typically not a recognized disability within the meaning of the ADA. *Minott v. Port Auth. of N.Y. & N.J.*, 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000). However, many "courts have distinguished between a normal, uncomplicated pregnancy itself and a complication or condition arising out of the pregnancy and have found that, under particular circumstances, the pregnancy-related condition can constitute a 'disability' within the meaning of the ADA." *Cerrato v. Durham*, 941 F. Supp. 388, 392 (S.D.N.Y. 1996); *accord Bateman v. Project Hospitality, Inc.,* 07-CV-2085 (RRM) (RML), 2009 WL 3232856, at *10 (E.D.N.Y. Sept. 30, 2009) (nothing that pregnancy complications can create physical impairments sufficient to substantially limit one or more major life activities, including ability to engage in employment, thus satisfying the ADA and NYSHRL's statutory definition of disability). Thus, a high-risk pregnancy that substantially limits a major life activity, such as working over the course of several months during the pregnancy, can constitute a disability under the ADA and NYSHRL. *Bateman,* 2009 WL 3232856, at *10;

*McKenna v. Santander Inv. Sec.*, Inc., 21-CV-941 (DLC), 2022 WL 2986588, at *7 (S.D.N.Y. July 28, 2022)) (finding that "a number of pregnancy-related impairments that impose work-related restrictions will be substantially limiting, even though they are only temporary").

Plaintiff has presented evidence that she was disabled for purposes of the ADA and NYSHLR due to the medical complications arising from her pregnancy. In emails to Sturtz and Williams requesting time off for several doctor's appointments, Plaintiff noted that she did not receive "great news" from her ultrasound and had to go to her doctor for "an emergency ultrasound at the high-risk doctor." ECF 56-7. Dr. El-Kady's note, which Plaintiff attached to her August 26 email to Sturtz and Williams, states that "due to [her] high-risk pregnancy, she should be out of work indefinitely."[4] ECF 56-14. Consequently, Plaintiff has established that, based on her high-risk pregnancy and the related complications, she is disabled within the meaning of the ADA and NYSHRL. *Bateman,* 2009 WL 3232856, at *10.

### 2) Ability to Perform Essential Job Functions with Reasonable Accommodation

As to the second element of her prima facie case, Plaintiff must show that "with reasonable accommodation, [she] could perform the essential functions of the job at issue," in light of her disability. *Tafolla*, 80 F.4th at 118-19; *accord McBride*, 583 F.3d at 96 ("[A] qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). Plaintiff bears the initial burden of proving that an accommodation exists that would permit her to

---

[4] Defendants argue that the note is inadmissible evidence to defeat summary judgment. However, the note was submitted by Defendants in support of their motion for summary judgment and Defendants relied on it to assert that Plaintiff requested indefinite leave. By relying on the note, Defendants "waived any objections to the admissibility" of the note. *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (holding that district court erred in excluding plaintiff's doctor's letters where defendants submitted them in support of their motion for summary judgment, attached them as exhibits to Rule 56.1 statement and relied upon them in seeking summary judgment, thus "defendants waived any objections to the admissibility of the reports by offering them themselves").

perform the essential job functions, after which the burden shifts to Defendants to demonstrate that the accommodation is not reasonable. This inquiry requires the Court to first determine which functions of the position are essential.

In evaluating a job's essential functions, courts must consider "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013); 29 C.F.R. § 1630.2(n)(2). Courts must also give "considerable deference to an employer's determination as to what functions are essential." *McMillan*, 711 F.3d at 126. This is a "fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice," and no one factor is dispositive. *Id*.

Defendants cite to an undated job description for "RN/Case Manager (Field Nurse)" that lists several "essential job responsibilities," including "provid[ing] skilled nursing care . . . for patients in their home setting," "observ[ing] . . . patient's physical and emotional status . . . ." Defs.' Reply 56.1 ¶ 10; Ex. D, ECF 56-6. While Plaintiff admits that her job required her to make and document home visits, Plaintiff disputes that this job description[5] was ever presented to her at any time during her employment with Constellation and that she was not required to drive "as she could [have been] driven there." Defs.' Reply 56.1 ¶ 10. Plaintiff asserts therefore that this document "lacks any indicia or testimony to establish that it was in place during [her] employment." Defs.' Reply 56.1 ¶ 10. However, Plaintiff has not argued or offered any evidence

---

[5] Plaintiff also states that the job title listed on that job description does not match the one listed on the letter of employment offer that she received. *Compare* Ex. D (position description listed as "RN/ Case Manager (Field Nurse)"), *with* Employment Letter (job title "Registered Nurse for Home Care – Full Time Suffolk County"). While Plaintiff is correct that the job titles are different, that distinction bears no relevance to the Court's conclusion as to the position's essential functions, and both job titles are not materially different: they convey that Plaintiff's job entailed making in-person visits to Constellation's clients.

that the responsibilities listed in that job description did not apply to her or that she did not perform these functions during her employment with Constellation.

In fact, as to how this job was performed, Plaintiff does not dispute that she made field visits to Constellation Home Care's clients to provide nursing services.  Defs.' Reply 56.1 ¶¶ 5, 10, 11; s*ee* Guerrero Dep. at 30:18-20, 35:15-19 (Plaintiff testified that she "would visit patients in their, [she] would assess them, [she] would educate them, [she] would review their hospital paperwork. [She] would do a little bit of case management. Then a lot of documentation."); 40:9-21 (describing how far she had to drive to make home visits); 54:14-21 (testifying that her job required her to make field visits).  It is also undisputed that other field nurses at Constellation are required make regular field visits to see clients and that Constellation did not allow remote work for this position.  Defs.' Reply 56.1 ¶ 11; *see* Sturtz Dep. at 26:17-27:14 (Sturtz testifying that registered nurses like Plaintiff "are expected to see five to seven patients a day," the timing of which is left to the nurse "so long as it is done during business hours"); 121:19-20 (Sturtz testifying that "[t]here are no clinical filed nurse remote position available" and there were no "hybrid positions available for a field registered nurse").

Thus, based on the job description and Plaintiff's work experience and the experiences of other employees, home care visits are essential functions of the position.  Plaintiff's dispute that driving was not essential function of the job does not alter the Court's conclusion that making home care visits was essential function of the job.

Having determined that making field visits is an essential function, the Court next addresses whether Plaintiff could perform this essential function with a reasonable accommodation.  *See McMillan*, 711 F.3d 127.  This burden is not heavy, as "[it] is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not

clearly exceed its benefits." *McMillan*, 711 F.3d 127; *accord Noll*, 787 F.3d at 94 (reasonable accommodation must be effective and may not impose undue hardship on the employer).  A reasonable accommodation "may take many forms," including "job restructuring, part-time or modified work schedules, reassignment to a vacant position […] and other similar accommodations for individuals with disabilities." *Noll*, 787 F.3d at 94; *McBride*, 583 F.3d at 97. However, a "reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003); *McBride*, 583 F.3d at 97.  Defendants argue that Plaintiff was not a qualified individual with a disability because her request for indefinite leave does not enable Plaintiff to perform the essential functions of her job as Plaintiff would not work at all.

As a threshold issue, the parties dispute whether Plaintiff requested indefinite leave as an accommodation: Defendants assert that Plaintiff requested indefinite leave in her email and reiterated that request on the phone call; Plaintiff asserts that her email requesting an accommodation never mentioned the word "indefinite" and that during the phone call, she conveyed to Sturtz that in the moment, she did not know exactly her return date.  The evidence shows that Plaintiff's email does not contain the word "indefinite" but rather states that Plaintiff needed to stop working "at this time" and go on "short-term disability."  ECF 56-14.  Dr. El-Kady's note that Plaintiff "should be out of work indefinitely" at most constitutes a medical determination as to Plaintiff's health status—not a request for accommodation. *Cf. McFarlane v. Chao*, 04-CV-4871 (GBD) (HBP), 2007 WL 1017604, at *17 (S.D.N.Y. Mar. 30, 2007) (leave request was reasonable despite the fact that "the letter from plaintiff's psychologist . . . stated that her return date was 'indeterminable'").  Thus, Defendants' reliance on Dr. El-Kady's note does not support the inference that Plaintiff herself requested indefinite leave.

Likewise, the phone call between Plaintiff and Sturtz also raise questions of fact as to whether Plaintiff requested "indefinite" leave at that time.[6]  The contemporaneous notes of the call do not indicate that Plaintiff herself requested "indefinite" leave – only that her "doctor placed her out indefinitely," ECF 70-6, 70-7 – an insufficient basis to support Defendants' position.  Plaintiff stated during her deposition that although she "provide[d] Constellation with a letter that stated explicitly that [she was] unable to work indefinitely," Guerrero Dep. at 146:23-147:2, on her call with Sturtz, she did not "reiterate [her] request for indefinite leave," *id.* at 87:18-20.  Further, Sturtz stated at her deposition that during the phone call, Plaintiff asked to go on short-term disability and how to file for FMLA, and that when she questioned Plaintiff about the note stating indefinite leave, Plaintiff "responded that she was out for the remainder of her pregnancy, for postpartum recovery and then to spend some time with her baby." *Id.* at 37: 8-13.

Construing the record most favorably to Plaintiff, Plaintiff sought to go on short-term disability due to her high-risk pregnancy – a request that necessarily implies that it was temporary with a finite period.  A leave of absence for a finite period may be a reasonable accommodation if an employee shows that leave will enable her to perform the essential functions of the job when she returns to work. *Manns v. United Airlines*, 13-CV-3668, 2016 WL 6826761, at *9 (E.D.N.Y. Nov. 17, 2016); *accord Graves*, 457 F.3d at 186 n.6 (leave of absence may be reasonable accommodation where "finite" and "reasonably likely to enable the employee to return to work").  Indeed, "[w]hile temporary leave, for a specified period of time, with clear prospects for recovery, could be a reasonable accommodation, an indefinite leave of absence is not." *Booker v. Soho Studio Corp.*, 17-CV-5426, 2020 WL 363912, at *5 (E.D.N.Y. Jan. 22, 2020) (cleaned up); *see*

---

[6] Since, neither party has produced or cited to an audio recording or transcript of the call, the only probative evidence of the substance of the call are the deposition testimonies of Plaintiff and Sturtz and two contemporaneous notes.  Pl's 56.1 ¶ 38.

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("[T]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover ....").

Here, Plaintiff did not provide a precise date or timeframe for when her requested leave would end because at the time of the August 6 call, Plaintiff did not know her precise delivery date. *See* Guerrero Dep. Tr. at 66:9-14 (Q. "When it says 'indefinite' does that mean at the end of the pregnancy as a defined ending, at delivery, for example? [A.] Right. But we didn't know when that delivery was going to happen or we don't know what was going to happen afterwards."). However, Plaintiff was five months pregnant at the time, and thus a jury could reasonably infer that her leave would not exceed the remaining months her pregnancy and potential recovery from any complications.

There was no indication from Plaintiff that upon giving birth, Plaintiff did not intend to return to work or that she would not have been able to perform the essential functions of the job upon her return. *Cf. Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 199 (S.D.N.Y. 1999) (discussing cases that found requested leave was unreasonable as a matter of law where "the absences were so erratic that the employer literally could not know from one day to the next whether the employee would be returning to work or not or at what time he or she might arrive"). Thus, the Court cannot rule that, as a matter of law, such a request would render her unqualified to work. *Hutchinson v. Ecolab, Inc.*, 09-CV-1848 (JBA), 2011 WL 4542957, at *9 (D. Conn. Sept. 28, 2011) (denying summary judgment because a reasonable jury could conclude that during the plaintiff was on short-term leave, plaintiff was qualified for his position with a reasonable accommodation in the form of medical leave of absence). The fact that Plaintiff did not provide Sturtz with a return date does not make her request for accommodation unreasonable, as "an initial

19

leave of absence without being able to provide a fixed date of return is a reasonable accommodation recognized by the EEOC." *Soriero v. Battery Park City Auth.*, 18-CV-1334 (WFK)(JO), 2020 WL 13659055, at *5 (E.D.N.Y. Dec. 18, 2020) (citing EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, 915.002 (Oct. 17, 2002)).  And Plaintiff's failure to provide a timeframe is indicative of the fact that Defendants failed to engage in an interactive process with Plaintiff.

For the purposes of a *prima facie* showing, once Plaintiff suggests a plausible reasonable accommodation, the burden of proof shifts Defendants to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable.  *McMillan*, 711 F.3d at 128; *accord Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir.2000). Defendants' only argument in this respect is that Plaintiff's request for indefinite leave would impose undue hardship.  However, as noted above, construing all reasonable inferences in favor of most Plaintiff, the record could support a finding that Plaintiff did not seek indefinite leave, but rather sought a finite leave commensurate with the remaining time of her pregnancy.  Defendants have not advanced any other argument or proffered other evidence that such an accommodation would impose undue hardship.

Defendants also argued that they are entitled to summary judgment on the ground that Plaintiff failed to cooperate in the interactive process.  The ADA envisions "an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  *Tafolla,* 80 F.4th at 122.  An employee's request for an accommodation triggers the interactive process by which the employer will determine whether a reasonable accommodation would allow the employee to perform her job duties.  *Id.*  However, an employer will not be subject to liability, unless the employer is responsible for a breakdown in

the interactive process.  On the other hand, "[a]n employee who is responsible for a breakdown of [the] interactive process may not recover for a failure to accommodate." *Nugent*, 303 F. App'x at 946.  Courts must deny motions for summary judgement when "presented with conflicting facts about the provenance of a breakdown." *Goonan*, 916 F. Supp. 2d at 480 (citing *Bohen*, 2009 WL 791356, at *14).

There is conflicting testimony by both parties as to whether they engaged in interactive process during the August 26, 2021, phone call to determine a reasonable accommodation.  Sturtz asserts that Plaintiff yelled at her and hung up before Sturtz could discuss Plaintiff's requests and other alternative accommodations. *Compare* Sturtz Dep. at 73:9-11 ("I didn't get an opportunity to offer her anything else.  She hung upon me.") *and id.* at 84:5-25 (stating that Constellation Home Care did not make effort to transfer Plaintiff to temporary position), *with* Sturtz Dep. at 93:19-22 ("I started the dialogue to discuss leave and she told me she was out indefinitely and then hung up on me").  Plaintiff says that Sturtz did not discuss Plaintiff's requests or explain Plaintiff's options, but rather she was fired upon informing Sturtz that she needed to go on leave. *See* Guerrero Dep. at 67:9-17 (stating that Plaintiff received a phone call from Sturtz informing Plaintiff that Sturtz accepted email as resignation); *id.* at 108:4-8 (stating Sturtz "didn't explain anything"); *id.* at 145:2-13 (answered "no" when asked if Sturtz ever suggested leave of absence, Sturtz "suggested anything," or Sturtz asked her if she needed any accommodations).  Based on these conflicting testimonies, summary judgment is denied on the issue of whether Defendants are liable for failure to engage in an interactive process with Plaintiff.

Given the dispute of fact as to the nature of the requested accommodation, and whether the lack of specific made the accommodation request unreasonable, this issue must be determined by a jury. *See Hutchinson*, 2011 WL 4542957, at *9.

21

### 3)    Defendant Failed to Make Such Accommodation

As to the fourth element – whether the employer has refused to make such accommodations – Defendants argue that summary judgment is appropriate because they granted multiple prior requests for accommodations that allowed Plaintiff to attend doctor's appointment, they engaged Plaintiff in interactive dialogues regarding her requests for accommodation, and, in any event, Plaintiff was responsible for any breakdown of the interactive process that took place during the August 26, 2021 phone call.  To the extent that Defendants viewed Plaintiff's August 26, 2021 email as a request for indefinite leave, such accommodation was denied and instead treated her e-mail as her resigning, and Defendants concede as much in their papers. *See* Defs.' Mem. at 12 ("In this case, Defendants denied Plaintiff's request for 'indefinite' leave because Plaintiff had no entitlement to any leave under state or federal law").  Accordingly, Plaintiff has met her prima facie case with respect to that element.

### b.  Defendants' Legitimate Non-Discriminatory Reason

Because Plaintiff has met her prima facie case on her failure-to-accommodate claim, the burden now shifts to Defendants to articulate a legitimate non-discriminatory reason.  Defendants make the same assertions here that they made in attacking Plaintiff's prima facie case: they viewed her request as one for indefinite leave and therefore did not grant it because she was not entitled to FMLA or NYS Paid Family Leave and Plaintiff did not make any accommodation requests that would enable her to work as a field nurse.  The Court has already rejected these arguments and has found that material disputes of fact remain as to each of Defendants' assertion.  Further, other forms of accommodations may have been available to Plaintiff under the company's manual, but genuine issues of fact remain as to whether these options were discussed with Plaintiff.  Thus, Defendants have failed to meet their burden at the second stage of the three-step shifting

framework.  As such, Defendants are not entitled to summary judgment on Plaintiff's failure-to-accommodate disability claims under the ADA and NYSHRL.

### 2. Wrongful Termination Claims

Plaintiff alleges that Defendants wrongfully terminated her based on her disability in violation of the ADA and NYSHRL, and Defendants move for summary judgment on these claims.

To prevail on a wrongful termination claim under the ADA or NYSHRL, Plaintiff must first make out a *prima facie* showing that: (1) her employer is subject to the relevant statutes; (2) she was disabled within the meaning of the relevant statutes; (3) she was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability.  *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001); *Weiss v. Cnty. of Suffolk*, 416 F. Supp. 3d 208, 213 n.2 (E.D.N.Y. 2018) (citing *McMillan*, 711 F.3d at 125-26).  NYSHRL claims require a fifth element: that "the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Gorman*, 146 F. Supp. 3d at 523-24 (citing *Spiegel*, 604 F.3d at 80).  This NYSHRL element is analyzed under the same standard governing ADA claims.  *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 528 (S.D.N.Y. 2015) (first citing *Graves*, 457 F.3d at 184 n. 3 (2d Cir. 2006) (explaining that the same legal standards govern NYSHRL claims as govern ADA claims); then citing *Gingold v. Bon Secours Charity Health Sys.*, 768 F.Supp.2d 537, 543 n. 6 (S.D.N.Y. 2011) (where the Court determines that a plaintiff has a disability under the ADA, that plaintiff's NYSHRL claim " 'survives or fails on the same basis' as his ADA claim")).  Defendants

argue that Plaintiff cannot make a prima face showing as to the second, third, fourth ADA elements and the supplemental NYSRHL element.

As to the second element, the Court has determined that Plaintiff was disabled. *See supra* 12-14. As to the third element, it is undisputed that without an accommodation, at the time of her requested accommodation, Plaintiff could not perform the essential functions of a field nurse. However, as discussed in Section A.1.a.ii, there remains genuine issues of facts as to whether Plaintiff, with the requested accommodation, could perform the essential functions of her position upon her return to work.

As to the fourth element, Defendants argue that Plaintiff did not suffer an adverse employment action because the adverse consequences were "entirely self-inflicted" and that because Plaintiff requested indefinite leave, she "precluded her ability to continue working on any terms." Defs.' Mem. at 23. An adverse employment action is an action that imposes "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). In other words, the alleged adverse employment action must have left the plaintiff "worse off, but need not have left her significantly so."[7] *Id.* at 359.

Here, Plaintiff's termination during the August 26, 2021, mere minutes after she inquired about a reasonable accommodation for her high-risk pregnancy, constitutes an adverse employment action. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). As discussed above, Defendants treated Plaintiff's request for accommodation as a resignation and terminated her employment. Plaintiff did not submit a resignation letter, as reflected by notes

---

[7] The decision in *Muldrow* overruled prior Second Circuit precedent which required that an adverse employment action be "materially adverse with respect to the terms and conditions of employment." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam) (citation omitted); *see Back v. Hapoalim*, 24-CV-1064, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024). The "materially adverse" standard described an action that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Davis*, 804 F.3d at 235.

stating that Plaintiff asked Sturtz "are you firing me?", and at that point Plaintiff had not gone on leave yet. *See* Guerrero Dep. at 67:12-17 ("[Sturtz told me that she was taking my e-mail as a resignation, which I explained to her I was not resigning."). Construing the facts in the light most favorable to Plaintiff, the Court does not conclude that Plaintiff voluntarily resigned from her position and therefore finds that, for purposes of a prima facie case, Plaintiff's termination was an adverse employment action. *See Wynn*, 2024 WL 115148, at *13 (finding adverse employment action where "Plaintiff was terminated only shortly after being notified that his absence would be *deemed* a voluntary quit – he did not submit a resignation letter or abandon his post" for a long time").

Finally, as the NYSHRL element requiring that the adverse action occur under circumstances giving rise to an inference of discrimination, Plaintiff's involuntary termination just mere minutes after requesting an accommodation for disability, Sturtz informing Plaintiff that she could return to her job once she was no longer pregnant (and therefore not disabled), and that she was offered her job back right after giving birth – all support an inference of discrimination. *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 128 (E.D.N.Y. 2011) ("Temporal proximity between the plaintiff's termination and her pregnancy, childbirth, or related medical condition can raise an inference of discrimination."); *Wilkerson*, 201 WL 5761649, at *8 (plaintiff met prima facie burden where plaintiff relied on adverse employment action taking place a day later); *see Lenzi*, 944 F.3d at 10 (stating that, where plaintiff "relies on ... temporal proximity ... to establish an inference of unlawful discrimination," the "sequence of events in this case is sufficient to raise the inference of discrimination necessary for [plaintiff] to carry her de minimis burden to establish a prima facie case")

Defendants proffer the same legitimate non-discriminatory reason here that they did for the failure-to-accommodate claim. Defendants have not carried their burden here for the same reasons the Court explained that they did not in context of the failure-to-accommodate claim. *See* Supra Section A.1.b. Consequently, Defendants are not entitled to summary judgment on Plaintiff's ADA and NYSHRL wrongful termination claims.

### 3. NYSHRL Aiding and Abetting

Plaintiff brings a claim of aiding and abetting under NYSHRL against Sturtz. Compl. ¶¶ 110-114. "The NYSHRL permits an employee to be held liable for aiding and abetting a liable employer." *Nanakumo v. New York City Health & Hosps. Corp*., 23-CV-00314 (ALC), 2025 WL 919479, at *9 (S.D.N.Y. Mar. 26, 2025). "The NYSHRL's aiding and abetting provision [N.Y. Exec. Law § 296(6)] makes it unlawful 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Xiang v. Eagle Enters., LLC*, No. 19 CIV. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) (quoting N.Y. Exec. Law § 296(6)). "To be liable under § 296(6), an individual employee need not have supervisory or hiring and firing power, but must have 'actually participated in the conduct giving rise to the claim.'" *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (quotation omitted). To state a NYSHRL aid-and-abet liability claim, Plaintiff must also successfully plead "[a]n underlying NYSHRL . . . violation[.]" *Brown v. New York City Transit Auth*., No. 22-CV-02949 (ALC), 2024 WL 1347283, at *8 (S.D.N.Y. Mar. 29, 2024) (quoting *Boonmalert v. City of N.Y*., 721 Fed. App'x 29, 34 (2d Cir. 2018)).

It is undisputed that Sturtz, a Human Resources representative employed by Constellation, had the authority to discuss Plaintiff's employment with her, and to provide her with information as to her benefits. It is not necessary to determine whether Defendant Sturtz possessed the written,

unilateral authority to hire or fire Plaintiff. *Malena*, 886 F. Supp. 2d at 367. It is sufficient that Defendant Sturtz received the email from Plaintiff in which Plaintiff requested information about leave, called Plaintiff, and spoke with Plaintiff about the challenged conduct which, taken together, are sufficient for Plaintiff's *prima facie case* for aid-and-abet liability. *Id.*; Pl.'s 56.1 ¶¶ 34- 40.

Because Plaintiff's NYSHRL failure to accommodate claim survives, and because Plaintiff has demonstrated Defendant Sturtz's personal involvement in the claim, Plaintiff's companion NYSHRL aid-and-abet claim survives summary judgment. *Wilkerson v. Metr. Transp. Auth.*, 19-CV-9340 (LJL), 2021 WL 5761649, at * (S.D.N.Y. Dec. 3, 2021) ("Because Plaintiff's failure-to-accommodate claim survives summary judgment, any claim for aiding and abetting discrimination by failing to provide a reasonable accommodation survives as well.").

B.    **Plaintiff's Sex and Pregnancy Discrimination Claims under Title VII/PDA and NYSHRL**

Plaintiff alleges that she was terminated in violation of Title VII "based on complications from her high-risk pregnancy, [and] medical conditions related to pregnancy," and was discriminated against based on her sex "in violation of NYSHRL § 296." Compl. ¶¶ 84, 95-96. "Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy" through the PDA. *Young v. United Parcel Service*, 575 U.S. 206, 210 (2015).

To prevail on her sex discrimination claim, Plaintiff must show that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019). For purposes of summary judgment, Defendants do not dispute that Plaintiff belongs to several protected classes based on gender and pregnancy, nor that she was qualified for her position.

However, the parties dispute, however, the third and fourth prongs: (3) that she suffered an adverse employment action; and (4) there is an inference of discrimination.

As to these two disputed elements, the Court determined that Plaintiff has met her prima facie showing in the context of her wrongful termination claim, and the Court's reasoning and analysis apply here.

The burden shifts to Defendants to articulate a legitimate non-discriminatory reason. Defendants point to several "legitimate, non-discriminatory reasons for denying Plaintiff's request for indefinite leave of absence": she was ineligible for such leave under "state or federal law" and that her request for "indefinite" leave was "an unreasonable accommodation as a matter of law, which employers need not grant." Defs.' Mem. at 12. As noted above, *supra* at 17-18, the Court has already found that Defendants have not conclusively established that Plaintiff requested "indefinite" leave. Further, Defendants' myopic focus on the fact that Plaintiff was not entitled to FMLA leave does not address whether Plaintiff was entitled to other form of leaves under the company's policies, including leave of absence or maternity leave.

Even assuming *arguendo* without deciding that Defendants have carried their burden, Plaintiff nonetheless has demonstrated pretext.  "Pretext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, without more."  *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) (quoting *Burdine*, 450 U.S. at 256, 101).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine*, 450 U.S. at 253.

While the evidence may be thin, the primary evidence Plaintiff adduced to make out her prima facie case is sufficient to rebut Defendants' proffered justifications. A jury could reasonably find that Defendants' justifications for terminating Plaintiff was pretextual – that, sex/pregnancy discrimination was a motivating factor in their decision to terminate Plaintiff's employment at Constellation. Plaintiff emailed Sturtz inquiring about her options to go on short-term disability due to the high-risk nature of her pregnancy; eight minutes later, on a phone call, Sturtz did not discuss with Plaintiff other forms of leave available pursuant to the company's policies, but instead Sturtz unilaterally construed that email as Plaintiff resigning even after Plaintiff reiterated that she was not resigning and directly asked Sturtz whether she was being fired. Plaintiff does not need a "smoking gun" proof of discriminatory intent, as few plaintiffs will have one. *United States v. City of New York*, 713 F. Supp. 2d 300, 322 (S.D.N.Y. 2010). The Court finds that, based on the record as a whole, genuine issues of material fact exist as to whether Defendants discriminated against her on the basis of sex and pregnancy. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's sex discrimination claim.

## C.    Plaintiff's Retaliation Claims under Title VII, ADA, and NYSHRL

Plaintiff asserts retaliation claims under the Title VII, the ADA, and NYSHRL, alleging that she engaged in protected activities when she requested reasonable accommodations on account of her pregnancy and related complications and that Defendants retaliated against her by wrongfully terminated her employment at Constellation. Compl. ¶¶ 101-12, 107-06, 116, 117.

To make out a *prima facie* claim for retaliation under the ADA, NYSHRL, and Title VII, Plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines, 5*93 F.3d 159, 164 (2d

Cir. 2010); *see Xiang*, 2020 WL 248941, at *9-10 ("Courts in this Circuit apply the Title VII retaliation test to ADA claims of retaliation.").

As an initial matter, Plaintiff's NYSHRL-based retaliation claim must be dismissed as a matter of law because New York intermediate appellate courts held that "under [NYSHRL], a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim." *Witchard v. Montefiore Med. Ctr.*, 103 A.D.3d 596, 597 (1st Dep't 2013) (citing *McKenzie v. Meridian Cap. Grp., LLC*, 35 A.D.3d 676 (2d Dep't 2006)); *see also D'Amico v. City of New York*, 159 A.D.3d 558, 558 (2018) (holding that the "plaintiff's request for a reasonable accommodation ... [does not] constitute[ ] protected activit[y] for purposes of the [NYSHRL]"). In turn, federal courts analyzing claims under NYSHRL have also applied this binding case law. *See, e.g. Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 346 (S.D.N.Y. 2024) ("[u]nder [the NYSHRL], a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim.") (collecting cases). This is because state courts have reasoned NYSHRL prohibits "discrimination against any person because he or she has opposed any practices forbidden under this article," N.Y. Exec. Law § 296(1)(e), and requesting an accommodation does not amount to opposing an employer's illegal conduct. *McKenzie*, 35 A.D.3d at 677. Here, Plaintiff does not allege that she was retaliated against for complaining about or opposing denial of a requested accommodation, but only that she was retaliated against for making such a request in the first place. Accordingly, Plaintiff's NYSHRL-based retaliation claim must be dismissed.

In contrast, requests for accommodation constitute protected activities under the ADA and Title VII for purposes of retaliation claims, and such, Plaintiff's ADA and Title VII retaliation claims are not subject to dismissal on that basis. *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017); *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 251 (S.D.N.Y. 2025) (holding

that "making a good faith request for an accommodation is a protected activity" under the ADA).

As to Plaintiff's remaining Title VII and ADA retaliation claims, Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish the fourth element – that there is a causal connection between the protected activity and the adverse employment action. "With respect to causation, a plaintiff must prove 'that 'but for' the disability, the adverse action would not have been taken.'" *Tafolla*, 80 F.4th at 125-26 (quoting *Natofsky*, 921 F.3d at 347). This can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence" or "(2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id*. (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).

Plaintiff has satisfied her *de minimus* burden of establishing a causal connection between her request for accommodation and the termination of her employment at Constellation: her request for information about leave accommodation was followed swiftly by a phone call leading to Plaintiff's termination. *See* supra at 24-26. Such a close proximity in time is more than sufficient, for purposes of a prima facie case, to support a causal connection. *See, e.g.*, *Samuels v. Urb. Assembly Charter Sch. for Computer Sci.*, 23-CV-1379 (RA), 2024 WL 4008165, at *10 (S.D.N.Y. Aug. 30, 2024), *aff'd*, 693 F. App'x 14 (2d Cir. 2017) (finding a three-day gap to be sufficiently close).

Further, while it is disputed whether Plaintiff was "fired" or placed on "inactive leave," either situation constitutes adverse employment action. *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d

231, 235 (2d Cir. 2015) (identifying an adverse employment action as one that is "materially adverse with respect to the terms and conditions of employment."); *compare Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 264 (E.D.N.Y. 2015) ("Placing an employee on unpaid leave can constitute an adverse employment action.") *with Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD) (PK), 2022 WL 1018791, at *10 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022) ("Termination is undoubtedly an adverse employment action.")

Even assuming *arguendo* that Defendants proffered a legitimate nondiscriminatory reason, a reasonable jury could conclude that Defendants' proffered reason was pretextual – that is, Defendants retaliated against Plaintiff for seeking accommodation for her disability.   The retaliatory conduct –here, Plaintiff's termination – was in close proximity, approximately eight minutes later, to her request for accommodation.    This is sufficient to support an inference of retaliation. *Tafolla*, 80 F.4th 126.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Title VII and ADA retaliation claims.

**D.    Dismissal of Claims Against Constellation Home Care, LLC (CT)**

Plaintiff's claims against Constellation Home Care, LLC (CT) must be dismissed as "it is uncontroverted that Plaintiff was employed by Constellation Home Care, LLC (NY), not Constellation Home Care, LLC (CT)." Defs.' Mem. at 30.  There are also "no factual allegation[s] whatsoever as to the 'functional symbiosis of the defendants,' which did not share management or a principal place of business, has been made." *Id.*  Plaintiff has not meaningfully contested the lack of involvement of Constellation Home Care LLC (CT) in any of the claims before this Court. *See generally* Pl.'s Opp.  Accordingly, Plaintiff's claims against Constellation Home Care LLC

(CT) are dismissed and Constellation Home Care LLC (CT) is dismissed as a defendant in this action.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Specifically, Defendants' motion for summary judgment is granted as to dismissal of Constellation Home Care, LLC (CT) and Plaintiff's NYSHRL-based retaliation claim. Defendants' motion for summary judgment is denied as to Plaintiff's disability discrimination based on failure to accommodate, discrimination based on wrongful termination, Plaintiff's sex/pregnancy discrimination claim, Plaintiff's claim for aiding and abetting under NYSHRL, and Plaintiff's retaliation claims.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

September 4, 2025
Brooklyn, New York