UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JENNIFER GUERRERO,

                Plaintiff,

        -against-

CONSTELLATION HEALTH SERVICES, LLC,
CONSTELLATION HOME CARE, LLC (NY), and
NICOLE STURTZ,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-7736 (OEM) (LGD)

ORELIA E. MERCHANT, United States District Judge:

At the conclusion of a five-day jury trial held from January 27, 2026, to February 2, 2026, the jury returned a verdict in favor of Plaintiff Jennifer Guerrero ("Plaintiff") for six of her seven claims. *See* Transcript of Civil Cause for Trial Before the Honorable Orelia E. Merchant ("Tr."); Verdict Sheet, Dkt. 117 ("Verdict"). The jury found Defendants Constellation Health Services, LLC; Constellation Home Care, LLC (NY) (together, "Constellation"); and Nicole Sturtz (individually, "Sturtz," and collectively with Constellation, "Defendants") liable for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act ("PDA"), and sex discrimination under the New York State Human Rights Law ("NYSHRL"). Verdict at 1-3. The jury also found Sturtz individually liable for aiding and abetting a violation of the NYSHRL. *Id.* at 3. The jury rejected Plaintiff's claim for disability discrimination under the NYSHRL. *Id.* at 2. The jury awarded Plaintiff $1,050,000 in damages. *Id.* at 4-6.

Before the Court are fully briefed cross motions for post-trial relief pursuant to Federal Rules of Civil Procedure 50 ("Rule 50") and 59 ("Rule 59").[1]  Plaintiff seeks a new trial on her NYSHRL disability discrimination claim and a new trial on damages for all claims.  Pl.'s Mot. at 1.  In the alternative, Plaintiff moves to amend the judgment to correct the NYSHRL disability discrimination claim and for a new trial on damages.  *Id.*  In further alternative, Plaintiff moves for a judgment as a matter of law on her NYSHRL disability discrimination claim.  *Id.*  Defendants request that the Court grant judgment as a matter of law in their favor as to all claims in which Plaintiff prevailed or, in the alternative, grant remittitur of the jury's award of back pay and punitive damages under the ADA and Title VII.  Defs.' Mot. at 1.

For the following reasons Plaintiff's Motion is granted in part and denied in part, and Defendants' Motion is granted in part and denied in part.

## BACKGROUND

The Court assumes the parties' familiarity with the procedural history and the trial record in this case, which are referred to here only as necessary to explain the Court's decision.

### A.  Evidence Presented at Trial

Plaintiff began working as a field nurse for Constellation in April 2021.  Tr. at 67:17-18.  Her job involved traveling and visiting patients in their homes to provide care.  *Id.* at 21-24.  In June 2021, Plaintiff informed Defendants that she was experiencing a high-risk pregnancy with related complications.  *Id.* at 70-73.  These complications included pelvic pain, contractions, and

---

[1] *See* Plaintiff's Memorandum of Law in Support of Post-Trial Motions Under Fed. R. Civ. P. 50 and 59, Dkt. 122-1 ("Plaintiff's Motion" or "Pl.'s Mot."); Memorandum of Law in Opposition to Plaintiff's Post-Trial Motion Under Fed. R. Civ. P. 50 and 59, Dkt. 127 ("Defendants' Opposition" or "Defs.' Opp'n"); Plaintiff's Reply in Support of Post-Trial Motions Under Fed. R. Civ. P. 50 and 59, Dkt. 130; Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law, or Remittitur of the Damages Award, Dkt. 121-1 ("Defendants' Motion" or "Defs.' Mot."); Plaintiff's Response to Defendants' Motion for Judgment as a Matter of Law, or Remittitur of the Damages Award, Dkt. 128 ("Plaintiff's Opposition" or "Pl.'s Opp'n"); Reply Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law, or Remittitur of the Damages Award, Dkt. 129.

2

difficulty walking, standing, and sitting. *Id*. at 123:17-124:3; 154:20-23; 156:12-18; 247:2-248:7. Defendants granted Plaintiff multiple accommodations by revising her work schedule so she could receive care related to her high-risk pregnancy. *Id.* at 80-86.

On August 24, 2021, Plaintiff's physician, Dr. Linder, ordered her to limit activity and cease working. *See* Trial Ex. 31. The following day, Plaintiff spoke with her OB-GYN, Dr. El Kady, who subsequently provided her with a letter stating that Plaintiff should be out of work indefinitely due to her pregnancy complications. *See* Trial Ex. 5; Tr. at 252-56.

On August 26, 2021, at 12:26 p.m., Plaintiff sent an email to Sturtz, Constellation's Director of Human Resources, requesting guidance regarding her need for leave and attaching the letter from Dr. El Kady. *See* Trial Ex. 5; Tr. at 59-61. Eight minutes later, at 12:34 p.m., Sturtz called Plaintiff. Tr. at 61:4-5, 176:17. Sturtz and Plaintiff presented different accounts of the phone call; Plaintiff testified that Sturtz terminated her without asking any questions about her condition or request for accommodation, *id.* at 156:23-160:8, and Sturtz testified that she did not terminate Plaintiff, *id.* at 475:7-15. It is undisputed that Plaintiff hung up the phone. *Id*. at 65:4-6; 351:8. Plaintiff further testified that she suffered from financial instability and long-term emotional distress as a result of her termination. *Id*. at 166:10-167:17.

Plaintiff was medically cleared to return to work on January 30, 2022. *Id.* at 592:17-19. On February 2, 2022, Defendants sent Plaintiff a letter offering her the opportunity to return to her role as a field nurse at the same rate of pay. *Id.* at 592:12-16. Plaintiff did not respond. *Id.* Instead, Plaintiff began a new nursing job with a different employer on or around March 2022 following the birth of her child. *Id*. at 592:20-1.

**B. The Jury's Verdict and Post-Trial Motions**

After deliberating over a two-day period, the jury returned a verdict in favor of Plaintiff for six of her seven claims. *See generally* Verdict. Specifically, the jury found Defendants liable for disability discrimination and retaliation under the ADA, sex discrimination and retaliation under Title VII, and sex discrimination under the NYSHRL. *Id.* at 1-3. The jury also found Sturtz individually liable for aiding and abetting a violation of the NYSHRL. *Id.* at 3. The jury rejected Plaintiff's claim for disability discrimination under the NYSHRL. *Id.* at 2.

The jury awarded Plaintiff $420,000 in back pay; $30,000 in non-economic compensatory damages; and $600,000 in punitive damages. *Id.* at 4-6. The punitive damages comprised $200,000 each for her claims under the ADA, Title VII, and NYSHRL. *Id.* at 5-6. The jury declined to award punitive damages against Sturtz individually. *Id.* at 6.

After the jury was discharged, Defendants renewed their motion for judgment as a matter of law and indicated that they would be moving for a new trial on damages or remitter under Rule 59. Tr. at 705:13-19. Plaintiff also renewed her motion for judgment as a matter of law. *Id.* at 705:24-25.

## LEGAL STANDARD

**A. Judgment as a Matter of Law Pursuant to Rule 50(b)**

Under Rule 50, a court may grant judgment as a matter of law against a party if "a reasonable jury would not have a legally sufficient evidentiary basis to find for that party." *Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 326 (2d Cir. 2010) (citing FED. R. CIV. P. 50(a)). A court "may set aside a jury's verdict 'where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that

4

reasonable and fair minded persons could not arrive at a verdict against him.'" *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016) (quoting *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 197 (2d Cir. 2014)). "Judgment as a matter of law pursuant to Rule 50(a) is appropriate when 'drawing all reasonable inferences regarding the weight of the evidence and the credibility of witnesses in favor of the non-movant, a reasonable jury could only have found for the movant.'" *Vermont Plastics Inc. v. Brine, Inc.*, 79 F.3d 272, 277 (2d Cir. 1996) (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1131 (2d Cir. 1995)).  Pursuant to Rule 50(b), following a request for judgment as a matter of law under Rule 50(a), and after entry of judgment, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."

## B.  Motion for New Trial Pursuant to Rule 59(a)(1)(A)

Under Rule 59(a)(1)(A), a district "court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action in law in federal court." While the "drafters of the rules [did not] enumerate all the grounds for a new trial," 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2805 (3d ed. 1998), courts have interpreted this standard to permit the granting of new trials when "(1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive," *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 174 (E.D.N.Y. 2012).  Such a motion "may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).  A court that evaluates such a motion is "free to weigh the evidence [it]self, and need not view it in the light most favorable to the verdict winner," but is cautioned to

5

"rarely disturb a jury's evaluation of a witness's credibility" and "should only grant such a motion when the jury's verdict is 'egregious.'" *Id.*

Granting a new trial is "extraordinary relief." *Welch*, 871 F. Supp. 2d at 174. Rulings on such motions "are committed to the sound discretion of the district court." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). "The Second Circuit has instructed district courts to 'abstain from interfering with [a jury] verdict unless it is quite clear that the jury has reached a seriously erroneous result' that would result in 'a miscarriage of justice.'" *Fioto v. Manhattan Woods Golf Enters., LLC.*, 304 F. Supp. 2d 541, 545-46 (S.D.N.Y. 2004) (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978)); *Lundstedt v. JP Morgan Chase Bank, N.A.*, 853 F. App'x 704, 709 (2d Cir. 2021) (holding that granting new trial "is warranted 'only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice'" (quoting *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014))). More generally, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite of the apple.'" *Sequa*, 156 F.3d at 144.

## C. Motion to Amend Judgment Pursuant to Rule 59(e)

"A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Phillips v. Metro. Transp. Auth.*, 21-cv-5679 (NRM) (LP), 2025 WL 2889272, at *1 (E.D.N.Y. Sep. 17, 2025) (quoting *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142-43 (2d Cir. 2020)). Relief under Rule 59(e) is an "extraordinary remedy that is to be employed sparingly." *Moon Rocket Inc. v. City of New York*, 24-CV-4519 (JPO), 2025 WL 2324074, at *2 (S.D.N.Y. Aug. 12, 2025) (citation modified); *see also Northwell Health, Inc. v. Blue Cross & Blue Shield of Mass., Inc.*, 23-cv-977 (NJC) (AYS), 2025 WL 3500645, at *5

6

(E.D.N.Y. Dec. 5, 2025) ("The 'manifest injustice' standard affords the district court substantial discretion and is rarely met.").

## DISCUSSION

### A. Plaintiff's Motion

#### 1. Motion for New Trial on NYSHRL Disability Discrimination

First, Plaintiff seeks a new trial on her NYSHRL disability discrimination claim. Plaintiff argues that because the jury found ADA disability discrimination, which has a stricter standard, "the verdict on [the NYSHRL disability discrimination claim] is a seriously erroneous result warranting a new trial." Pl.'s Mot. at 7. Defendant contends that Plaintiff waived her objection based on the alleged inconsistent verdict and that the verdict is not sufficiently egregious to warrant a new trial. Defs.' Mot. at 2-8.

Plaintiff waived her objection. "It is well established that party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to excusing the jury." *Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 254 (E.D.N.Y. 2012) (quoting *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006)); *see also Chere Amie, Inc. v. Windstar Apparel Corp.*, 01 Civ. 0040(WHP), 2003 WL 22056935, at *3 (S.D.N.Y. Sept. 4, 2003) ("A party objecting to an allegedly inconsistent verdict is not entitled to a new trial, and his objection may be deemed waived, if he failed to object to the inconsistency prior to the discharge."). "The timely objection requirement is 'not merely a technicality' — it serves 'to give the court and the opposing party the opportunity to correct an error in the conduct of the trial.'" *Anderson Grp. LLC v. City of Saratoga Springs*, 805 F.3d 34, 47 (2d Cir. 2015) (quoting *Kosmynka,* 462 F.3d at 83). Here, Plaintiff failed to object to the verdict before the jury was discharged. *See* Tr. at 698:3-705:10. Plaintiff therefore cannot raise the objection now. *See Kosmynka*, 462 F.3d at 83; *Anderson*, 805 F.3d at 47 ("[B]y

7

raising its inconsistency argument for the first time in its post-trial motion papers long after the jury was excused, [the plaintiff] waived its objection.").

Further, Plaintiff has not pointed to a fundamental error in the jury instructions or verdicts sheets. "If a timely objection is not made, the failure to can be excused only if the district court committed a 'fundamental error,' a standard that is more stringent than the plain error standard applicable to criminal appeals Federal Rule of Criminal Procedural 52(b)." *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004); *see also Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002) ("Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a criminal trial . . . and is 'so serious and flagrant that it goes to the very integrity of the trial.'" (quoting *Shade v. Hous. Auth. of New Haven,* 251 F.3d 307, 313 (2d Cir. 2001))). Indeed, Plaintiff argues that the Court properly instructed the jury that the NYSHRL casts a wider net than federal law. *See* Pl.'s Mot. at 10-11. The Court therefore need not reach the merits of Plaintiff's arguments for a new trial. *See Werbungs v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1026 (2d Cir. 1991) (finding fundamental error when the jury charge "deprived the jury of adequate legal guidance to reach a rational decision."); *Anderson*, 805 F.3d at 50 (holding that because the defendant "waived its argument regarding the inconsistency of the jury verdict[,] the district court should not have reached the merits of that argument, and it therefore erred when it ordered a new trial on that ground"). Accordingly, Plaintiff's motion for a new trial on her NYSHRL disability discrimination claim is denied.

### 2. Motion for New Trial on Damages

Second, Plaintiff seeks a new trial on damages for all her claims on the grounds that the jury's failure to find NYSHRL disability discrimination "manifested itself across every damages category." Pl.'s Mot. at 12. Plaintiff asserts that the jury's emotional distress damage award was

too low, while the jury simultaneously "overawarded back pay and awarded zero punitive damages against the individual decisionmaker," which "reflect[s] a compromised damages deliberation warranting a new trial." *Id.* Defendants contend that the jury's damages awards are "readily explained by the trial record." Defs.' Opp'n at 8.

Beginning with the $30,000 emotional distress award, the jury's award does not warrant a new trial on damages. Courts have noted that "'[g]arden variety' emotional distress claims lacking extraordinary circumstances and without medical corroboration, generally merit $30,000 to $125,000 awards." *Quinby v. WestLB AG*, 04 Civ. 7406(WHP), 2008 WL 3826695, at *3 (S.D.N.Y. Aug. 15, 2008). "Courts have, however, upheld significant awards for emotional distress 'even absent proof of long-term psychological damage,' where the 'harassment [] continued for [several] years.'" *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 323 (S.D.N.Y. 2018) (quoting *Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 332 (S.D.N.Y. 2016)).

Here, Plaintiff asserts that the trial record establishes emotional damages in the form "stress-induced contractions during a high-risk pregnancy, hyperventilation episodes, panic attacks, chronic insomnia, significant weight gain, and a fundamental personality transformation corroborated by her mother's testimony — all of which persisted for more than four years." Pl.'s Mot. at 14-15. These damages, however, were predicated solely on the lay witness testimony of Plaintiff and her mother without corroborating medical evidence.[2] There is also no record of extraordinary circumstances or a pattern of abuse or discrimination by Defendants. As such, the jury was within its discretion to award garden variety emotional distress damages. *See Duarte*, 341 F. Supp. 3d at 321("Plaintiff's vague and subjective complaints of insomnia, lower self-esteem, depression, anxiety, and stomach aches and headaches — unsupported by medical

---

[2] The single medical record admitted into evidence, an August 24, 2021, progress note written by Dr. Linder, does not mention the emotional harms alleged by Plaintiff. *See* Trial Ex. 31.

9

corroboration — establish no more than 'garden variety' emotional distress."); *Santiago v. Crown Heights Cntr. for Nursing and Rehab.*, 15-CV-4381 (DLI) (CLP), 2017 WL 4410807, at *4 (E.D.N.Y. Sep. 30, 2017) (awarding a $30,000 emotional distress award under Title VII and the NYSHRL); *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 154 (E.D.N.Y. 2013) (same).

Plaintiff's assertion that the jury's award of zero punitive damages against Sturtz, the individual who carried out the termination, is inconsistent and establishes "that the entirety of the jury's damages deliberation was compromised," Pl.'s Mot. at 16, also does not warrant a new trial. While the jury found Sturtz personally liable for aiding and abetting sex discrimination under the NYSHRL, Verdict at 3, the Court instructed the jury that "[u]nder the NYSHRL, punitive damages are appropriate if you find that Defendants acted recklessly, or with conscious disregard for Plaintiff's rights." Tr. at 668:9-11. Plaintiff herself concedes that a jury could "find individual liability yet exercise its discretion to award no punitive damages." Pl.'s Mot. at 16; *see also Allam v. Meyers*, 906 F. Supp. 2d 274, 291 (S.D.N.Y. 2012) ("The decision whether to award punitive damages rests 'within the sound discretion of the jury, and an award of punitive damages should not be lightly disturbed.'" (quoting *Solis-Vicuna v. Notias*, 898 N.Y.S.2d 45, 48 (2d Dep't 2010))). As there is evidence to support a finding that Sturtz did not act recklessly or with conscious disregard for Plaintiff's rights, the Court declines to question the discretion of the jury in choosing not to award punitive damages. *See* Tr. at 479:13-18, 480:20-24, 481:11-14; 594:2-14 (Sturtz testified that she believed Plaintiff's request exceeded the 30-day limit in Constellation's policies.); *id.* at 482:8-13, 490:18-492:9 (Sturtz testified that she was unable to offer a temporary position pursuant to Constellation's maternity policy.); *Allam*, 609 F. Supp. 2d at 291.

Plaintiff's final argument that the jury's $420,000 back pay award is further evidence of a "pattern" of compromised damages calculations is unpersuasive. Pl's Mot. at 12. Plaintiff herself

10

"concedes that the $420,000 back pay award exceeds what the trial evidence supports." *Id.* However, the calculation of back pay is independent from emotional distress and punitive damages. Furthermore, the jury's $420,000 award can be traced to discrete errors: the jury's failure to consider Plaintiff's inability to work and the date at which she resumed working. *See infra* section B.2.a. As such, the Court offers remittitur of the excessive back pay award in lieu of a new trial, should Plaintiff accept. *See id.*; *Cole v. Foxmar, Inc.*, 23-87, 2024 WL 74902, at \*4 (2d Cir. Jan. 8, 2024) ("[W]hen a district court concludes that a damages award is excessive, it has discretion to either grant a new trial outright or to first give the plaintiff the option to accept a lower damages award through remittitur."). Should Plaintiff decline remittitur, then Plaintiff's motion for a new trial on the issue of damages is granted.

### 3. Motion to Amend Judgment

In the alternative to a new trial on her NYSHRL disability discrimination claim, Plaintiff seeks to amend the judgment.[3] Plaintiff argues that the jury's NYSRHL disability discrimination verdict "reflects a clear error of law" and a manifest injustice. Pl.'s Mot. at 17-18. In support of this contention, Plaintiff asserts that the NYSHRL disability discrimination verdict was legally impossible given the jury's finding of ADA disability discrimination. *Id.* at 17. Defendants contend that the standards for disability under the ADA and the NYSHRL "are textually different" such that Plaintiff's failure to substantiate her disability with medical evidence explains jury's verdict in favor of Defendant. Defs.' Opp'n at 4-8.

---

[3] The Court notes that judgment has yet to be entered in this case. Nonetheless, Rule 59 motions may be filed prior to the entry of judgment. *See* FED. R. CIV. P. 59 advisory committee's note to 1995 amendment ("The phrase 'no later than' is used — rather than 'within' — to include post-judgment motions that sometimes are filed before actual entry of the judgment by the clerk."); *Applestein v. Kleinhendler*, 20-CV-1454, 2025 WL 990804, at \*7 n.5 (E.D.N.Y. Apr. 2, 2025).

Although the standard for relief under Rule 59(e) is rarely met, *Northwell*, 2025 WL 3500645, at \*5, it is met here.  As noted in the jury instructions, the NYSHRL "casts a wider net than federal law." Tr. at 657:22-23.  NYSHRL claims and ADA claims are governed by the same legal standards, *Kopchik v. Town of E. Fishkill*, 759 F. App'x 31, 37 (2d Cir. 2018), but the NYSHRL's coverage is even broader, as its definition of disability is not limited to impairments that "substantially limit one or more major life activities."  *Compare* N.Y. EXEC L. § 292(21) (defining a disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques")*, with* 42 U.S.C. § 12102(2) (defining disability as (1) having "a physical or mental impairment that substantially limits his major life activities"; (2) having "a record of such an impairment"; or (3) "being regarded as having such an impairment").

Contrary to Defendants' position regarding Plaintiff's lack of medical evidence, the text of the NYSHRL does not require Plaintiff to substantiate her disability with medical evidence.  *See* N.Y. EXEC L. § 292(21) (defining disability through functional limitations *or* demonstration by medically acceptable techniques); *see also infra* section B.1.a (discussing the permissibility of Plaintiff's lay testimony in establishing her disability under the ADA).  Given that the NYSHRL and ADA are interpreted coextensively, it is inconsistent for the jury to find in favor of Plaintiff for her ADA discrimination claim and not her NYSHRL discrimination claim.  *See Dicarlo v. Walgreens Boot All., Inc.*, 15-CV-2919 (JPO), 2016 WL 482982, at \*2 (S.D.N.Y. Feb. 5, 2016) ("[T]he [NYSHRL] claim rises or falls with the ADA claim." (citing *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 97 (2d Cir. 2012))).  The Court acknowledges that "when faced with an apparent inconsistency, [it] must adopt a view of the case, if there is one, that resolves any seeming

12

inconsistency, making every attempt to reconcile the jury's findings, by exegesis if necessary." *Hundley v. Frunzi*, 23-581-pr & 23-6932 (Con), 2024 WL 3886996, at *3 (2d Cir. Aug. 21, 2024) (quoting *Ali v. Kipp*, 891 F.3d 59, 65 (2d Cir. 2018)).  However, it is unable to do so here.

Accordingly, the jury's verdict in favor of Defendants with respect to Plaintiff's NYSHRL disability discrimination claim amounts to a clear error and a manifest injustice against Plaintiff. Plaintiff's motion to amend the judgment pursuant to Rule 59(e) is granted, and the Court finds in favor of Plaintiff on her NYSHRL disability discrimination claim.[4]

### B. Defendants' Motion for Judgment as Matter of Law or, Alternatively, Remittitur

#### 1. Motion for Judgment as a Matter of Law

Defendants move for judgment as a matter of law on all of Plaintiff's claims in which she prevailed.  *See* Defs.' Mot. at 2-9.

##### a. ADA Discrimination Claim

First, Defendants contend that the evidence at trial was insufficient to establish that Defendants violated the ADA.  Def.'s Mot. at 2.  Specifically, Defendants argue that Plaintiff failed to establish disability under the ADA and failed to prove that she was a qualified individual for whom a reasonable accommodation existed.  *Id.* at 2-7.  Plaintiff contends that her testimony was sufficient to establish her disability and that Defendants failed to engage in the required interactive process.  *See* Pl.'s Opp'n at 2-10.

As for Plaintiff's disability, Plaintiff testified to pregnancy-related complications including pelvic pain, contractions, and difficulty walking, standing, and sitting.  Tr. at 123:17-124:3; 154:20-23; 156:12-18; 247:2-248:7.  Such physical limitations are "obvious to an observer and

---

[4] As the Court grants Plaintiff's Motion in regard to her NYSHRL disability discrimination claim pursuant to Rule 59(e), it does not address Plaintiff's alternative argument for judgment as a matter of law pursuant to Rule 50(b). Pl.'s Mot. at 19.

easily described by the sufferer," and are therefore amenable to proof through non-medical evidence. *E.E.O.C. v. Autozone, Inc.*, 630 F.3d 635, 644 (7th Cir. 2010) (cited in *Rodriguez Village Green Realty, Inc.*, 788 F.3d 31, 43 (2d Cir. 2015)).

Defendants position rests on superseded case law. Defendants contend that "a plaintiff's personal testimony which describes the alleged limitations that affect a major life activity, without supporting medical testimony, simply is not sufficient to establish [a] prima facie case under the ADA." Defs.' Mot. at 9 (quoting *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 301 (S.D.N.Y. 2003)). However, in *Rodriguez v. Village Green Realty, Inc.*, the Second Circuit explained that "[m]edical testimony may be helpful to show that an impairment is substantially limiting, but it is not always necessary." 788 F.3d at 43-44. The court further explained that "non-medical evidence that conveys, in detail, the substantially limiting nature of an impairment may be sufficient." *Id.* at 44; *see also Grabin v. Marymount Manhattan Coll.*, 12 Civ. 3591 (KPF), 2015 WL 4040823, at *13 (S.D.N.Y. July 2, 2015) ("[M]any major life activities are equally amenable to proof through non-medical evidence."). Accordingly, this evidence was sufficient to establish Plaintiff's disability under the ADA.

Defendants' argument that Plaintiff failed to establish she was qualified individual for whom a reasonable accommodation exists similarly misses the point. Under the ADA, regardless of whether a reasonable accommodation actually exists, employers are required to engage in an interactive process with their employees to determine the feasibility of their requested accommodation. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("[A]n employee who proposes an accommodation . . . triggers a responsibility on the employer's part to investigate that request and determine its feasibility. An employer who fails to do so, and instead terminates the employee . . . has discriminated 'because of' disability within the meaning of the

14

ADA."). Here, Plaintiff sent Sturtz an email seeking guidance because her doctor informed her that she needed to stop working, and this email included an attachment from her doctor stating that she should be out of work indefinitely. *See* Trial Ex. 31. While "[t]here is ample case law stating that the ADA does not require an employer to grant an employee an indefinite leave of absence," *Wisneski v. Nassau Health Care Corp.*, 296 F. Supp. 2d 367, 374, (E.D.N.Y. 2003), Plaintiff's testimony provided sufficient evidence from which the jury could conclude that Defendants failed engage in the required interactive process in response to her accommodation request, *see* Tr. at 156:23-160:8 (testifying that Sturtz called her eight minutes after sending the email and did not ask her any questions prior to terminating her).

Accordingly, Defendant's motion for judgment as a matter of law with respect to Plaintiff's ADA discrimination claim is denied.

### b. Title VII, PDA, and NYSHRL Claims

Second, Defendants assert that Plaintiff failed to establish an inference of discrimination and thus her claims under Title VII, the PDA, and the NYSHRL should all be dismissed as a matter of law. Defs.' Mot. at 7. Plaintiff contends that the temporal proximity between her accommodation request and her termination supports an inference of discrimination. Pl.'s Opp'n at 10-11.

Defendants' argument is unavailing. "[A] variety of circumstances can give rise to an inference of discrimination[.]" *Mitchell v. N.Y.C. Dep't of Educ.*, 24-992, 2025 WL 978366, at *2 (2d Cir. Mar. 31, 2025) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 503 (2d Cir. 2009). One such circumstance is the "sequence of events leading to the plaintiff's discharge." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[A] plaintiff can indirectly establish a causal connection

15

to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." (quoting *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.,* 252 F.3d 545, 554 (2d Cir. 2001))).  Here, Defendants argue that Plaintiff failed to establish an inference of discrimination because the change in her employment status was the result of her own choice to stop working and because there is no comparator evidence or evidence of criticized performance or degrading comments about her sex or pregnancy.  Defs.' Mot. at 8-9.  However, Plaintiff testified that Sturtz called her and terminated her eight minutes after she sent the accommodation request email.  Tr. at 156:23-157:15.  Drawing all inferences in favor of Plaintiff, this sequence of events and the close proximity between the protected activity and the termination is sufficient for the jury to find an inference of discrimination.  *See Chambers*, 43 F.3d at 37; *Gorzynski*, 596 F.3d at 110.

Accordingly, Defendants are not entitled to judgment as a matter of law on Plaintiff's Title VII, PDA, and NYSHRL sex discrimination claims.

### c.  Retaliation Claims

Third, Defendants argue that Plaintiff failed to establish that they retaliated against her in violation of the ADA or Title VII.  Specifically, Defendants contend that because Plaintiff ended the phone call between her and Sturtz by hanging up before Sturtz could finish the interactive process, "Plaintiff precluded her own ability to continue working on any terms, [and] she cannot claim retaliation under Title VII or the ADA."  Defs.' Mot. at 9.  Plaintiff asserts that Defendants' argument "conflates requesting an accommodation with abandoning employment."  Pl.'s Opp'n at 12.

Defendants' argument amounts to a disagreement with the jury's assessment of the facts. It is the province of the jury to resolve factual discrepancies and make a credibility determination.

16

*See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133-34 (2d Cir. 2008) ("In reviewing such a [motion for judgment as a matter of law], this Court 'must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence.'" (quoting *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 51 (2d Cir. 2000))). While Sturtz testified that she did not get the chance to engage in the interactive process due to Plaintiff hanging up on her, Tr. at 480:12-14, Plaintiff testified that Sturtz told her to return her supplies, after which she hung up the phone, *id.* at 65:4-6. Deferring to the jury's weighing of this evidence, the Court declines to disturb their determination.

Accordingly, Defendants are not entitled to judgment as a matter of law with respect to Plaintiff's ADA and Title VII retaliation claims.

### 2. Remittitur

In the alternative to judgment as a matter of law, Defendants seek remittitur of the jury's award of back pay, as well as the jury's award of federal punitive damages under the ADA and Title VII. Defs.' Mot. at 9. "Remittitur is the process by which the court compels a plaintiff to choose between reduction of an excessive verdict or a new trial." *Anderson*, 805 F.3d at 51 (quoting *Stampf*, 761 F.3d at 204. "Remittitur is appropriate to reduce verdicts only in cases 'in which a properly instructed jury hearing properly admitted evidence nevertheless makes an excessive award.'" *Werbungs*, 930 F.2d at 1027 (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 50 (2d Cir. 1984)). "A remittitur, in effect, is a statement by the court that it is shocked by the jury's award of damages." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990).

17

### a. Back Pay

First, Defendants contend that Plaintiff is entitled to no back pay because she was unable to work from August 24, 2021, until January 30, 2022, and because Plaintiff provided no evidence of mitigation of her damages. Defs.' Mot at 10. Plaintiff concedes that $420,000 back pay award is excessive and not supported by the evidence but asserts that the correct remedy is a damages retrial. Pl.'s Opp'n at 13.

Plaintiff is not entitled to backpay for the period between August 26, 2021, to January 30, 2022. "Backpay serves to 'make persons whole for injuries suffered through past discrimination.'" *Clarke v. Statewide Auto Repair, Inc.*, 22-CV-07942 (JMA) (LGD), 2025 WL 1530578, at *4 (E.D.N.Y. May 29, 2025) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996)). "Ordinarily, a plaintiff who establishes she has been unlawfully terminated is entitled to an award of back pay from the date of termination until the date of judgment." *Morse v. JetBlue Airways Corp.*, 09-CV-5075 (KAM) (MDG), 2014 WL 2587576, at *3 (E.D.N.Y. June 9, 2014) (quoting *Meling v. St. Francis Coll.,* 3 F. Supp. 2d 267, 275 (E.D.N.Y. 1998)). "The purpose of an award of back pay 'is to completely redress the economic injury the plaintiff has suffered as a result of discrimination,' and, as such, the plaintiff is 'only entitled to losses suffered as a result of [a defendant's] discrimination.'" *Morse*, 2014 WL 2587576, at *3 (quoting *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 145 (2d Cir. 1993)). Accordingly, the back pay remedy "does not extend to periods when a plaintiff would have been unable to continue working due to disability." *Morse*, 2014 WL 2587576, at *3 (citing *Thornley v. Penton Pub., Inc.,* 104 F.3d 26, 31 (2d Cir. 1997)).

Here, Plaintiff informed Defendants that she needed to stop working on August 26, 2021. Tr. at 591:9-12. She testified that she suffered from a variety of physical limitations due to her high-risk pregnancy. *Id.* at 123:17-23, 156:12-18, 315:11-13. (testifying that she could not engage

18

in physical activity like standing, sitting, or walking for long periods of time). These limitations prevented her from working as a field nurse for Defendants, which obligated her "to see clients in-person at regular intervals." *Id.* at 589:25-590:1. Plaintiff was medically cleared to return to work on January 30, 2022. *Id.* at 592:17-19. Accordingly, Plaintiff was unable to work due to her disability from August 26, 2021, until January 30, 2022, and is therefore not entitled to back pay during that period as a matter of law. *See Morse*, 2014 WL 2587576, at *3; *Morley v. Ciba-Geigy Corp.*, 122 F.3d 1056, 1056 (2d Cir. 1997) ("Because the plaintiff was not able to work during the time period in question . . . she has not suffered any harm as a result of the defendant's alleged discrimination for which she can be compensated.").

As Plaintiff was medically cleared to work on January 30, 2022, and obtained a new nursing job on or around March 2022,[5] Tr. at 592:20-21, the remaining question is whether Plaintiff is entitled to back pay for February 2022. The parties do not dispute that on February 2, 2022, Defendants sent Plaintiff a letter offering her the opportunity to return to her role as a field nurse at the same right of pay and that Plaintiff did not respond to that letter. *Id.* at 592:12-16. Defendants contend that this unconditional offer of employment tolled the accrual of back pay damages. Defs.' Mot. at 13-14. Plaintiff asserts that the offer was not made in good faith and that she acted reasonably in rejecting it. Pl.'s Opp'n at 15-16.

---

[5] Plaintiff failed to offer evidence regarding the rate of pay of this employment. Accordingly, the Court is unable to calculate to what extent Plaintiff's back pay award is offset by payment from this employment. *See Francis v. Ideal Masonry, Inc.*, 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *9 (E.D.N.Y. Aug. 3, 2018) (reducing the total back-pay award by the amount the plaintiff earned from comparable employment during the back pay period). While "[a] plaintiff seeking back pay 'need not prove the amount of loss with mathematical precision,' [they] may recover back pay only to the extent that the evidence offers a 'sufficient basis' for estimating an amount 'with reasonable certainty.'" *Clarke*, 2025 WL 1530578, at *4 (quoting *Sir Speedy, Inc. v. L&P Graphics Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992)). As Plaintiff failed to provide evidence offering a sufficient basis for estimating a back pay award for the period following the start of her new nursing job, the Court declines to award back pay for that period.

There was sufficient evidence for the jury to conclude that Plaintiff acted reasonably in not accepting the unconditional offer of employment. "It is settled law that a victim of employment discrimination is required to mitigate his lost wages 'us[ing] reasonable diligence in finding other employment.'" *Jernigan v. Dalton Mgmt. Co.*, 819 F. Supp. 2d 282, 291 (S.D.N.Y. 2011) (quoting *Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 125 (2d Cir. 1996)). "Thus, '[w]hen an employer makes an unconditional offer to reinstate an employee terminated as a result of discrimination, the employee's rejection of that offer forecloses any claim for future front pay and tolls the continuing accrual of back-pay liability.'" *Jernigan*, 819 F. Supp. 2d at 290 (quoting *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 908 (2d Cir. 1997)). To toll the accrual of back pay, the offered employment must be substantially equivalent to employment that was previously denied. *Schultz v. Congregation Shearith Isreal of City of New York*, 867 F.3d 298, 306 (2d Cir. 2017). However, "where the employer's offer is not made in good faith, or where the employee otherwise acted reasonably in rejecting the offer, the offer of renewed employment will not cut off the accrual of damages." *Id.* Whether the offer was made in good faith, and whether the employee acted reasonably in rejecting it, "are questions for the finder of fact." *Id.*

Here, the jury heard testimony from Plaintiff regarding her unwillingness to work for a company that terminated her during a time of distress. Tr. at 64:25-65:1-3. Moreover, there was sufficient evidence for the jury to conclude that Plaintiff used reasonable diligence in searching for other employment once she was medically cleared to work. As a fact stipulated by the parties, the jury heard that Plaintiff obtained a new nursing job following the birth of her child on or around March 2022, only a month after she was medically cleared to work. *Id.* at 592:20-21. As such, Plaintiff is entitled to back pay for February 2022 in the amount of $7,500.[6]

---

[6] Plaintiff's annual salary was $90,000 per year. *See* Defs.' Mot., Exhibit 5. One month of back pay is therefore $7,500.

20

Finally, Defendants argue that Plaintiff's back pay award should be further reduced by the amounts she received in disability insurance payments. Defs.' Mot. at 14-15. Although Plaintiff does not address this argument, whether to deduct to such benefits is within the discretion of the Court. *See Dailey v. Societe Generale*, 108 F.3d 451, 460 (2d Cir. 1997) ("[T]he decision whether or not to deduct unemployment benefits from a Title VII back pay award rests in the sound discretion of the district court."). When exercising this discretion, many courts apply the collateral source rule and decline to reduce back pay awards for benefits that were provided through a source other than the employer. *See Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 255 (E.D.N.Y. 2014) (collecting cases); *see also Norris v. N.Y.C. Coll. of Tech.*, 07-CV-853, 2009 WL 3841970, at *1 (E.D.N.Y. Nov. 18, 2009) (noting that "the rationale for the collateral source rule disappears 'when the employer itself is the source of the benefit — that is, where the source of the benefit is not 'collateral'" (quoting *EEOC v. Yellow Freight Sys., Inc.*, 98 CIV. 2270 (THK), 2001 WL 1568322, at *1 (S.D.N.Y. Dec. 6, 2001))).

The Court declines to exercise its discretion to further reduce the back-pay award. Here, the evidence presented at trial established that Plaintiff received benefits from Defendants' disability insurance carrier. Tr. at 316:13-15, 442:6-19, 473:24-474:6. Under these facts, reduction is unwarranted. *See Siracuse v. Program for the Dev. of Hum. Potential*, 07 CV 2205 CLP, 2012 WL 1624291, at *15 (E.D.N.Y. Apr. 30, 2012) (exercising discretion "in favor of plaintiff and declin[ing] to impose an offset [to plaintiff's back pay award by the amount received in disability benefits] that would merely reduce the amount that the employer is required to pay for its unlawful conduct, resulting in a windfall for the very party found responsible for plaintiff's damages"); *Meling*, 3 F. Supp. 2d at 276 (declining to deduct amounts received in disability benefits from the plaintiff's back pay award even though the defendant employer sent premiums

to the insurance company on behalf of all employees); *Klein v. United States,* 339 F.2d 512, 517-18 (2d Cir. 1964) (holding that disability insurance benefits should not be offset against any recovery).

### b. Punitive Damages

Next, Defendants argue that the combined $400,000 punitive damages award under the ADA and Title VII are unsupported and against the weight of the evidence.[7]  Defs.' Mot. at 15-20.  In the alternative to overturning the punitive damage awards, Defendants contend that the awards are statutorily and constitutionally excessive and should be reduced.  *Id.* at 21-25.  Plaintiff argues that the punitive damages awards are supported by the evidence and permissible in their amount.  Pl.'s Opp'n at 17-20.

As an initial matter, there is sufficient evidence in the record to support the jury's award of punitive damages.  "Punitive damages [under Title VII] are limited . . . to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of the aggrieved individual.'"  *Farias v. Instructional Sys., Inc.*, 259 F.3d 91,101 (2d Cir. 2001) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30 (1999)); *see also Kamiel v. Hai St. Kitchen & Co. LLC*, 19-cv-5336 (PAE) (SDA), 2020 WL 1916534, at *6 (S.D.N.Y. Mar. 17, 2020) (applying the same standard in an ADA case).  "Malice and reckless indifference refer to 'the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'"  *Farias*, 259 F.3d at 101 (quoting *Kolstad*, 527 U.S. at 535).  The jury heard testimony regarding Sturtz's human resources background, specifically that she served as Constellation's Director of Human Resources during the time of the August 26, 2021, phone call.  Tr. at 457:4-5.  The jury also heard testimony

---

[7] Defendants note that they are not challenging the award of punitive damages for Plaintiff's NYSHRL disability discrimination claim.  Defs.' Mot. at n.2.

from Sturtz regarding her education in ADA accommodations. *Id.* at 337:20-338:9. Sturtz's knowledge of the legal protections afforded to Plaintiff, coupled with her admission she "didn't look into anything" regarding whether Plaintiff's request constituted an undue burden, *id.* at 500:14-17, provides a sufficient basis for the jury to find that Sturtz disregarded a perceived risk of violating federal law. Further, as discussed above, Plaintiff testified that Sturtz terminated her only eight minutes after she submitted an accommodation request and that Sturtz did not ask her any questions during the August 26, 2021, phone call. *Id.* at 156:23-160:8. Notwithstanding the undisputed fact that Plaintiff hung up the phone, Plaintiff's testimony provides a sufficient basis for punitive damages to the extent that the jury credits Plaintiff's account of the phone conversation. *See supra* section B.1.c. Accordingly, the Court declines to vacate the award of punitive damages. *See Farias*, 259 F.3d at 101.

With respect to Defendants' argument that the Title VII and ADA punitive damages awards are statutorily excessive, 42 U.S.C. § 1981a(b)(3)(D) states that the sum of compensatory damages awarded for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed" $300,000 for defendants with more than 500 employees. This statutory cap applies under the ADA and Title VII. *See Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235 (2d Cir. 2000) (ADA); *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 384 (2d Cir. 2001) (Title VII).

Here, the jury awarded $430,000 in emotional distress and punitive damages for Plaintiff's ADA and Title VII claims. Plaintiff does not dispute that the statutory cap applies and that Defendants employ over 500 people. Pl.'s Opp'n at 19. Accordingly, the Court reduces the combined ADA and Title VII punitive damages award to $270,000, making the combined

23

emotional distress and punitive damages award $300,000 in accordance with the statutory cap. *See* 42 U.S.C. § 1981a(b)(3)(D).

Turning to whether the punitive damage awards are constitutionally excessive, "courts must not disturb a jury award of punitive damages unless it 'shocks the judicial conscience.'" *Walker v. City of New York*, 11-CV-314(CBA) (JMA), 2014 WL 12652345, at *16 (E.D.N.Y. Sep. 3, 2014) (quoting *Paterson v. Balsamico*, 440 F.3d 104, 120 (2d Cir. 2006)).  "The Supreme Court outlined three 'guideposts' to facilitate its review of state court punitive damage awards: (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to the actual harm inflicted, and (3) 'the difference between this remedy and the civil penalties authorized or imposed in comparable cases.'"  *Stampf*, 761 F.3d at 209 (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

With respect to the first *Gore* factor of reprehensibility, which is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award," *Gore,* 517 U.S. at 575, Defendants contend that there is no evidence to support a finding of reprehensibility in Defendants' conduct.  Defs.' Mot. at 22.  Plaintiff argues that "[t]erminating an employee within eight minutes of a pregnancy-related accommodation request, with no interactive process, no exploration of alternatives, and no inquiry into undue hardship, is reprehensible conduct."  Pl.'s Opp'n at 20.

Reprehensibility is not present here.  "Conduct that involves deceit or malice is more reprehensible than conduct involving mere negligence. . . . Likewise, conduct that could cause serious physical or emotional injury is more reprehensible than conduct that risks only minor injuries or economic damages."  *Stampf*, 761 F.3d at 209 (citation omitted); *see also Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (instructing courts to consider "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted

24

with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct"). Here, the record is devoid of evidence showing violence or threats of violence against Plaintiff, and there is also no evidence suggesting that Defendants' conduct was deceitful. While Plaintiff presented evidence regarding long-term emotional injuries, Tr. at 166:10-167:5, there is no evidence of a pattern or repeated instances of misconduct by Defendants. Accordingly, the reprehensibility inquiry favors a reduction in the punitive damages award. *See Stampf*, 761 F.3d at 210 (finding that the punitive damages imposed "were excessive in relation to the reprehensibility of her conduct"); *Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.C.*, 79 F. Supp. 2d 197, 207 (E.D.N.Y. 2000) (finding no reprehensibility where there was no evidence of violence, nor evidence that defendant "engaged in repeated instances of misconduct with respect to other employees"); *Quinby*, 2008 WL 3826695, at *12 (finding reprehensibility where "the jury found that Defendant had engaged in multiple instances of retaliation against Plaintiff herself"); *Thomas v. iStar Fin.*, 508 F. Supp. 2d 252, 262 (S.D.N.Y. 2007) (finding "sufficient evidence of reprehensible conduct to warrant a punitive damage award" but noting that "reprehensibility should not be overstated" given "there was no threat of violence to [the plaintiff]").

The punitive award fares no better under the second *Gore* factor. The Supreme Court has explained that it cannot "'draw a mathematical bright line' between constitutionally acceptable and unacceptable ratios for punitive damages." *Stampf*, 761 F.3d at 210 (quoting *Gore*, 517 U.S. at 582). However, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Nonetheless, greater ratios "may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic

25

damages.'" *Id.* (quoting *Gore*, 517 U.S. at 582).  After taking into account the reduction of the ADA and Title VII punitive damages under the statutory cap, Plaintiff's total punitive damages award, including the $200,000 NYSHRL punitive award, is $470,000.  Plaintiff's total compensatory damages award is $37,500.  Comparing these amounts shows a ratio of over 12:1.  This double-digit ratio alone is enough to "raise a suspicious judicial eyebrow," *Gore*, 517 U.S. at 583, and, in fact, smaller ratios have been found to warrant a reduction, *see, e.g., Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 149 (2d Cir. 2011) (find that a 5.7:1 ratio "weigh[ed] heavily in favor of a punitive damages award equal to or less than the remitted compensatory damages award"); *Payne v. Jones*, 711 F.3d 85, 103 (2d Cir.  2013) (finding a 5:1 ratio of $300,000 in punitive damages to $60,000 compensatory damages warranted remittitur).  Further, while noting that Defendants' conduct has resulted in only a small amount of economic damages, the Court does not find that Defendants' conduct was "particularly egregious" such that due process comports with such a comparatively large punitive award.  *See Robertson v. Sullivan*, 07-CV-1416, 2010 WL 1930658, at *6 (E.D.N.Y. May 12, 2010) (disregarding the high ratio between punitive and compensatory damages in light of the defendants' deliberate, violent, and deceitful conduct).  Accordingly, the second *Gore* factor favors a reduction in punitive damages.

The final *Gore* factor likewise warrants a reduction.  The Second Circuit has noted the comparability inquiry "is precarious because the factual differences between cases can make it difficult to draw useful comparisons." *Payne*, 711 F.3d at 105.  Nonetheless, the Court notes that "[c]ases upholding punitive damage awards of $200,000 or more generally involve discriminatory or retaliatory termination resulting in severe financial vulnerability to plaintiff, repeated incidents of misconduct over a significant period of time, repeated failures to address complaints of discrimination, and/or deceit." *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546,

26

566-567 (S.D.N.Y. 2012) (collecting cases). As discussed above, there is no evidence suggesting that Plaintiff was the victim of repeated instances of misconduct or deceit. While Plaintiff did testify to her financial vulnerability, Tr. at 167:13-17, the $470,000 punitive award is greater than awards issued in cases involving more reprehensible conduct. *See, e.g., Luciano v. Olsten Corp.*, 110 F.3d 210, 221-22 (2d Cir. 1997) (affirming the remittitur of a $5 million punitive award to the Title VII statutory maximum of $300,000 where there was "ample evidence" of malice or reckless indifference with regard to sex discrimination, including testimony that the plaintiff was called a degrading term at an official business function); *Manzo v. Sovereign Motor Cars, Ltd.*, 08-CV-1229 (JG)(SMG), 2010 WL 1930237, at *5 (E.D.N.Y. May 11, 2010) (upholding a $200,000 punitive award under Title VII where the plaintiff's supervisor engaged in repeated instances of sexual harassment, intentionally manipulated the terms of her employment in furtherance of his sexual advances, and used the plaintiff's financial situation to his advantage); *DeCurtis v. Upward Bound Int'l, Inc.*, 09 Civ. 5378(RJS), 2011 WL 4549412, at *1, 5-6 (S.D.N.Y. Sep. 27, 2011) (awarding $75,000 in punitive damages on plaintiff's sex discrimination and retaliation claims where supervisor repeatedly touched plaintiff in a sexual manner without her consent, sent plaintiff sexually explicit e-mails and made sexually explicit comments, and threatened her job when she complained).

Furthermore, courts in this Circuit have remitted punitive awards to amounts below $100,000 in cases where, as here, reprehensible conduct was lacking. *See, e.g., Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 580 (S.D.N.Y.2011) (remitting a $1 million punitive award to $50,000 in a retaliation case as defendant's conduct did not involve violence, threats, racial slurs, or other egregious conduct, and noting that "an award of $50,000 is more in line with the punitive damages awarded in similar cases by this Court and other courts in this

27

Circuit."); *Norris v. N.Y.C. Coll. of Tech.*, 07-CV-853, 2009 WL 82556, at *7-8 (E.D.N.Y. Jan. 14, 2009) (remitting a $425,000 punitive damage award to $25,000 in a retaliation case and reasoning that, "[w]hile the evidence supports the conclusion that [defendant] acted intentionally and with knowledge that his conduct would violate [plaintiff's] rights, no other indicia of reprehensibility are present."); *Fernandez*, 79 F. Supp. 2d at 207-08 (concluding that "the maximum award of punitive damages that would not be excessive is $50,000" after finding "a low degree of reprehensibility" in defendant's conduct).

In light of each *Gore* factor as applied to this case, the Court finds that the $470,000 punitive award is excessive. Considering the low degree of reprehensibility of Defendants' conduct, and the disparity between the award in this case and awards in similar cases, the Court finds that the maximum award of punitive damages that would not be excessive is $50,000. The Court offers this award to Plaintiff in lieu of a new trial on damages. *See Cole*, 2024 WL 74902, at *4.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is granted in part and denied part, and Defendants' Motion is granted in part and denied in part, as follows:

1) Plaintiff's Rule 59(e) motion is granted with respect to her NYSHRL disability discrimination claim, and the judgment shall be amended to reflect a finding in favor of Plaintiff on her NYSHRL disability discrimination claim;

2) Defendants' motion for judgment as a matter of law in their favor as to all claims in which Plaintiff prevailed is denied; and

3) Defendants' motion for remittitur of the jury's award for back pay and punitive damages is granted. Plaintiff's back pay award is remitted to $7,500 and Plaintiff's punitive award is

remitted to $50,000,[8] subject to Plaintiff's right to demand a new trial limited to the amount of back pay and punitive damages.  Plaintiff shall inform the Court of her election with respect to the remittitur of the compensatory and punitive damages awards by May 1, 2026.

       SO ORDERED.

             /s/

ORELIA E. MERCHANT
United States District Judge

April 21, 2026
Brooklyn, New York

---

[8] Plaintiff's total damages award amount is $87,500, including $7,500 in back pay, $50,000 in punitive damages, and $30,000 in non-economic compensatory damages.

29